Argued October 10; affirmed November 19, 1929

# LUCY BEATRICE SAURMAN *v.* J. SHELLEY SAURMAN

· SAURMAN

(282 Pac. 111)

118

For appellant there was a brief and oral argument by *Mr. W. C. Winslow.*

For respondent there was a brief over the name of *Messrs. Keyes & Page* with an oral argument by *Mr. E. M. Page.*

ROSSMAN, J. June 27, 1928, the plaintiff filed her complaint in this suit praying for a decree of divorce based upon charges of cruel and inhuman treatment; she alleged that the parties have no children and that they "have settled their property rights out of court." Proper service was had on that day upon the defendant and the district attorney. June 28, 1928, the defendant filed a demurrer which was overruled June 30; the order disposing of the latter recited that the defendant refused to plead further and that he consented that he "may be adjudged in default for want of an answer"; thereupon his default was entered upon the records, the case was set for trial and the court proceeded to hear the testimony. Upon the conclusion of the hearing, that is on June 30, a decree in favor of the plaintiff was entered dissolving the marriage contract between the parties; it recited that Mr. Lyle J. Page, deputy district attorney for Marion county, appeared at the trial on behalf of the state; it made no mention of the property settlement contract and awarded the plaintiff no relief except the dissolution of the marriage contract. In the above proceeding and in the negotiation for the property settlement the plaintiff was represented by Mr. Rollin K. Page, an attorney of ability and of good repute. July 28, 1928, the plaintiff, having

obtained another attorney, and by so stating the narrative we mean to cast no adverse reflection upon the latter, filed a motion to vacate the decree; the premise of the latter was thus stated:

"* * * for the reason that the same was prematurely entered before the time for answering had expired, either for the defendant or the State of Oregon; and for the reason that the same was not heard before the court as required by law; and for the further reason that the same was procured by fraud of the defendant herein."

After reciting the foregoing the motion proceeds "and that in case the court refuses to cancel or annul said decree, the same be modified by requiring defendant herein to pay to plaintiff for the plaintiff's support and maintenance, the sum of $350.00 per month until further order of this court." This motion was accompanied by an affidavit, subscribed by the plaintiff, wherein she recited diverse representations, which she averred the defendant had made to her concerning his financial worth; after alleging their falsity she stated that they had induced her to sign the property settlement contract and that it made inadequate provision for her considering the defendant's resources; she submitted that a monthly allowance of $350 for her support and maintenance was reasonable. Her affidavit also charged that when her suit was tried neither the judge nor the deputy district attorney was present.

This motion was resisted by the defendant, who filed seven affidavits, which took issue with the averments of the plaintiff's affidavit; six of these were signed by individuals who apparently were disinterested, and the seventh was subscribed by the defendant. These affidavits not only denied the charges made by the plaintiff but also contained explanatory and new

matter. Upon the filing of these the plaintiff subscribed to another, which denied the foregoing new matter and averred some additional representations which she charged were made to her by an official of a Salem bank; these were fully denied in another affidavit signed by the latter individual. We understand that the defendant is faithfully discharging the provisions of the property settlement.

This series of ten affidavits presented issues of fact only. Succinctly stated the principal charges made by the plaintiff were that the defendant, his partner and the aforementioned official of the Salem bank, had fraudulently misrepresented to her the financial condition of her husband; that the bank official especially had taken advantage of her physical condition, which she described as being ''a nervous wreck,'' and had represented to her that unless she promptly procured a divorce from the defendant the latter would leave Salem for parts unknown or would take his life; and further the plaintiff's affidavit presented an issue whether the judge and the deputy district attorney were present when the testimony was presented. Other averments made by the plaintiff were intended to cast reflections upon other individuals; we deem it unnecessary to review these. None of the plaintiff's charges were corroborated by any other persons. Her charges of false representations concerning the defendant's worth, and that the defendant's partner and banker friend had persuaded her to apply for a divorce, were fully denied by those to whom she attributed the wrongful conduct. Indirectly these charges were contradicted by the affidavits of three individuals whose statements indicated that the plaintiff instituted the present proceeding for the purpose of harassing the defendant, ruining his practice, and rendering him incapable of

remarriage. There are affidavits in the record which allege that she was fully informed as to the defendant's resources and income before she signed the property settlement contract. The plaintiff's contention that neither the judge nor the deputy district attorney were present when the testimony was presented is contradicted by the recitals of the decree, by the fact that the same judge denied this motion, and by the affidavits of at least one, if not two attorneys. Incidentally it is deserving of notice that the plaintiff nowhere states that she was adverse to applying for a divorce; her nearest approach to such a statement is the following: "I was not particularly desirous of obtaining said divorce, although I had sufficient grounds therefor, as alleged in plaintiff's complaint."

■■■ When we consider the very serious nature of the accusations made by the plaintiff which include charges that, (a) several of the individuals, whose affidavits are before us and who apparently are not interested in the domestic affairs of these parties, maliciously represented facts to her, (b) that the defendant's partner made threats that "he would give damaging testimony against me * * * he still kept talking about going to testify against me and that I wouldn't get anywhere," which we assume means that he threatened to testify falsely if necessary; (c) that some of the plaintiff's recitals cast unpleasant reflections upon women who are not concerned with this proceeding, and (d) that other of her accusations charge responsible residents of Salem with wrongfully importuning her to divorce her husband, we believe that we are justified in making certain that she has discharged her burden of proof before we accept as true the accusations she has filed as a basis for this motion. The judge of the court below, who saw her as a witness a month

before she filed this motion, ruled upon it adversely to her. The motion was predicated in part upon a charge that neither he nor the deputy district attorney was present when her testimony was offered; if that part of her claim was true we are certain that the circuit judge would have confessed his own neglect and would have set aside the erroneous decree; the fact that he did not do so, when accompanied by the recitals of the decree to which we have made reference, supplies a strong inference that the court found her mistaken in this charge. We have given to the entire matter earnest consideration and have concluded that the burden which she undertook when she filed her affidavit has not been discharged. Such being our conclusion the motion to vacate the decree, so far as it is predicated upon charges of fraud, will be denied.

■ It remains to consider whether it is now possible to modify the divorce decree by requiring the defendant to pay for the plaintiff's support the sum of $350 per month. Section 514, O. L., authorizes the court, at any time after the decree is given, upon the motion of either party, to modify "so much of the decree as may provide for the maintenance of either party to the suit." The decree before us made no such provision; hence, we are not called upon to modify it, but to amend it by adding something which previously was not there: *McFarlane v. McFarlane,* 43 Or. 477 (73 P. 203), points out that the section of our code just mentioned confers power only to modify but not to amend. See also 19 C. J., Divorce, § 577, p. 249. The motion to modify will therefore be denied.

■ The plaintiff seems to believe that this suit confers upon us power to review and adjust, if necessary, the property settlement which the parties negotiated. The complaint alleged that the parties had settled their

property rights; the prayer asked for no alimony and the decree granted none. The contract settling the property rights apparently became no part of the record in the divorce suit trial. The authorities above cited make it clear that under these circumstances we can not undertake to adjust the property settlement.

We have considered all other matters argued but find no occasion to reverse or modify the conclusion of the circuit court. It follows that its order will be affirmed.

McBride, J., did not participate in this opinion.

Coshow, C. J., Bean and Rand, JJ., concur.