HARRY T. NICOLAI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93821, 98188.  Promulgated October 9, 1940.

*George J. Perkins, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

904

OPINION.

SMITH: The first question for our consideration is whether the petitioner is liable for income tax for 1935 in respect of the $2,475 income for 1935 of the trust which he created with the West Coast National Bank on or about January 31, 1927, under his agreement with Bessie Nicolai on December 31, 1926, and on $9,735.30 of the income of the trust for 1936, which is the amount paid over by the trustee in 1936 to the beneficiary of the fund, Bessie O'Gorman. The respondent contends that the petitioner is liable for income tax upon the income of the fund under the provisions of section 167 of the Revenue Acts of 1934 and 1936. The material part of that section in each act provides as follows:

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

\* \* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

The respondent also relies upon article 167-1 of Regulations 86 and 94, promulgated under the provisions of the Revenue Acts of 1934 and 1936, as amended by Treasury Decision 4860, Cumulative Bulletin 1938-2, p. 184, reading in part:

\* \* \* If, for example, trust income is applied in satisfaction of the grantor's legal obligation whether to pay a debt, to support dependents, to pay alimony, to furnish maintenance and support, or otherwise, such income is in all cases taxable to the grantor.

In his deficiency notice in Docket No. 93821 the respondent explains his reason for including in gross income of the petitioner for 1935 the $2,475 as follows:

\* \* \* In Court Decision 1158 [*Helvering* v. *Brooks* (C. C. A., 2d Cir. 1936), 82 Fed. (2d) 173], cited in Cumulative Bulletin XV-2, page 242, it is held that where the taxpayer on June 4, 1930, created an irrevocable trust for the benefit of his wife who was suing for divorce, the trust instrument providing for payment to the wife during her life of a certain amount a year out of the trust income in settlement of their marital property rights, and the decree of divorce entered on June 5, contained no provision as to alimony or property rights, the trust income was used to discharge the legal obligation of the husband and hence was taxable to him. Accordingly, this trust income has been added to the income reported on your return.

Since these proceedings were heard the Supreme Court has handed down opinions in *Helvering* v. *Fitch*, 309 U. S. 149; *Helvering* v. *Fuller*, 310 U. S. 69; and *Helvering* v. *Leonard*, 310 U. S. 80. These cases elucidate the legal principle enunciated in *Douglas* v. *Willcuts*, 296 U. S. 1. In the *Fitch* case, the first to be decided, it was held that the income from a trust which the taxpayer had created for the benefit of his divorced wife was taxable to him under the doctrine of *Douglas* v. *Willcuts, supra*, in the absence of "clear and convincing proof, * * * that the local law [Oregon] and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent."

The facts in *Helvering* v. *Fuller, supra*, in so far as the legal principle is concerned, are very similar to the facts in the proceedings at bar. Fuller transferred 60,380 shares of class A common stock of the Fuller Brush Co. on the books of the corporation from himself, personally, to himself as trustee; he retained personally an equal number of shares of the same class of stock. He delivered the certificate for the shares which had been transferred on the books to himself as trustee to a corporate trustee, together with a dividend order directing the corporation to pay the dividends to the corporate trustee and to be used for the maintenance and support of his wife, from whom a divorce was contemplated or, in case of her death, for her children. The trust was to continue for 10 years; at the expiration of the 10 years the stock was to be transferred to the wife outright. Fuller retained the right to vote the stock. In addition, he agreed to pay his wife $40 per week for a fixed period. During the trust period power to sell the stock was vested in Fuller, his wife, and the corporate trustee and could only be exercised in case the three agreed in writing. A divorce was granted in the State of Nevada; the settlement agreement was approved by the court, but the court retained no power to alter the decree or the settlement agreement. The husband was held liable for income tax upon the income of the trust fund to the extent of the $40 per week guaranteed but not upon the balance. The Supreme Court said:

* * * If respondent had not placed the shares of stock in trust but had transferred them outright to his wife as part of the property settlement, there seems to be no doubt that income subsequently accrued and paid thereon would be taxable to the wife, not to him. Under the present statutory scheme that case would be no different from one where any debtor, voluntarily or under the compulsion of a court decree, transfers securities, a farm, an office building, or the like, to his creditor in whole or partial payment of his debt. Certainly it could not be claimed that income thereafter accruing from the transferred property must be included in the debtor's income tax return. If the debtor retained no right or interest in and to the property, he would cease to be the owner for purposes of the federal revenue acts. * * *

In *Helvering* v. *Leonard*, *supra*, the grantor of a so-called alimony trust, the husband, was held taxable on the trust income where the trust agreement imposed upon him a continuing obligation, although a contingent one, to support his wife, and where it was not shown by clear and convincing proof that the local law (New York) gave him a full discharge from such obligation. In its opinion the Court said:

The trust agreement contains an express personal obligation of respondent in the form of a guarantee of payment of the principal and interest on $400,000 of the 6% bonds which were part of the trust corpus. To be sure, that personal obligation was contingent. But we do not deem that to be material. We recently stated in *Helvering* v. *Fitch*, *supra*, p. —, that under this statutory scheme escape from the rule of *Douglas* v. *Willcuts*, *supra*, may be had only on "clear and convincing proof" that "local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent." Whatever may be the correct view on the other aspects of the case, the guarantee was such a continuing obligation. The fact that the wife or other beneficiaries looked primarily to the trust and only secondarily to respondent for payment of $24,000 annually, the fact that respondent's obligation might be enforceable by the trustee, the fact that respondent might never have to make good on his promise are beside the point. The existence of wholly contingent obligations, whether contractual or otherwise, is adequate to support the results reached in *Douglas* v. *Willcuts*, *supra*. * * *

* * * * * * *

* * * In *Helvering* v. *Fitch*, *supra*, we stated that where the divorced husband desires to avoid the general rule expressed in *Douglas* v. *Willcuts*, *supra*, he carries a distinct burden of establishing not by mere inference and conjecture but by "clear and convincing proof" that local law and the alimony trust have given him a full discharge. We do not think that respondent has sustained that burden.

The respondent submits that the trust income here in controversy was used to pay a legal obligation of the petitioner and is therefore taxable to petitioner, the grantor, under the rule of *Douglas* v. *Willcuts*, *supra*, in which it was held that the income of a trust created by the taxpayer providing for annual payments out of income to his wife in lieu of alimony, and any other interest in his property or estate, was taxable to the husband, the grantor, under the provisions of the Revenue Acts of 1926 and 1928. In that case the trust agreement was executed three days before the wife was granted a decree of absolute divorce in a District Court of the State of Minnesota, and the provisions of the trust agreement were approved by the court and incorporated in the decree. In holding that the trust income was used to pay a legal obligation of the taxpayer, the Supreme Court stated in part:

* * * The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered. *Burnet* v. *Wells*, *supra*. In the present case, the net income of the trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly.

The legal principle enunciated in *Douglas* v. *Willcuts, supra,* has been applied by the courts and by the Board in many cases which have come before them. In the light of the recent decisions of the Supreme Court it would appear that the principle has been misapplied in some cases. As elucidated by the Supreme Court, it appears clear that where a husband in contemplation of divorce makes an absolute transfer to his wife of securities in full settlement of all of his marital obligations, the income from the securities thereafter received by his divorced wife is taxable to her. This is under the general principle that each individual is liable to income tax upon his own income. The situation is not different where the husband creates an irrevocable trust and transfers to a trustee securities the income of which is to be paid to the wife for life, with remainders over. It is only where the divorced husband has a continuing obligation to support the wife, either by virtue of local law or by the terms of the trust agreement, that the divorced husband is liable to income tax in respect of the income. Apparently the United States Circuit Court of Appeals for the Sixth Circuit, in *Commissioner* v. *Tuttle,* 89 Fed. (2d) 112, properly interpreted the decision of the Supreme Court in *Douglas* v. *Willcuts, supra.* Referring to that case it said:

\* \* \* The settlement there provided for a specified payment in money through the trustee to the wife. Payment was secured by the transfer of securities in trust. The transfer was but for security, however, since deficiencies were to be made up by the settlor and excess income was to be paid to him. Finality was not achieved by the agreement. Here the transfer, so far as it operates, is absolute. There is no guaranty of return, no obligation to make up deficiency, no reservation of excess income, no right retained to change or substitute securities. The wife definitely and finally accepted the income from a certain amount of property, whatever it might prove to be, in settlement of her claims to dower and other rights. There remained no continuing obligation on the part of the respondent for support and maintenance, no debt to be paid out of his income, either actually or constructively. Upon the creation of the trust the trustor's obligations to his wife under both the contract and the decree were fully and finally liquidated.

We first consider the question whether under the laws of Oregon the petitioner had any obligation for the support of his wife after the divorce. The respondent argues that, since Bessie Nicolai in her complaint for divorce pleaded: "That all property rights between plaintiff and defendant have been settled and that the plaintiff asks for no alimony, temporary or permanent, different or beyond the provision made for her in said settlement", and that the divorce decree stated that the court had "considered the pleadings in this case", the property settlement agreement between the petitioner and Bessie Nicolai was incorporated as a part of the decree. We think it manifest that there is no basis for this contention. The whole purpose of the agreement between the petitioner and Bessie Nicolai

was to settle their property rights without the intervention of the court. Although under the laws of Oregon the court could have granted alimony, it did not do so. No alimony was asked, no alimony was granted. The decree was a decree of absolute divorce, without any reference being made to alimony or any property settlement between the spouses.

The decree of the court severed the bonds of matrimony. Thereafter plaintiff and defendant were in the same legal position as though no marriage had ever existed between them. It is true that under the laws of the State of Oregon the divorced wife was not permitted to remarry within a period of six months, but that provision had nothing to do with the effectiveness of the decree.

Section 6–915, Oregon Code 1930, provides:

*  *  *  At any time after a decree is given, the court or judge thereof, upon *the motion of either party, shall have the power to set aside, alter or modify so much of the decree [of divorce] as may provide for the appointment of trustees for the care and custody of minor children, or the nurture and/or education thereof, or the maintenance of either party to the suit;*  *  *  *

In the decree granted by the court there was no part of the decree which provided for the appointment of trustees for the care of minor children or the nurture or education thereof, or the maintenance of either party to the suit. In *Saurman* v. *Saurman*, 131 Or. 117; 282 Pac. 111, it was held that, where an absolute divorce was granted and nothing was said in the decree about alimony, the court had no authority thereafter to amend its decree and grant alimony.

Section 1–907, Oregon Code 1930, so far as pertinent, reads:

*  *  *  and [the court] may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.

If no application for a modification of a judgment is made within the term of one year upon the ground stated, the decree becomes absolute and the court has no further jurisdiction to modify the decree. Clearly one year after the date of the decree of divorce (January 10, 1927), the decree of divorce entered in favor of Bessie Nicolai was not subject to any attack.

The years before us in these proceedings are the years 1935 and 1936. During those years both of the children of the petitioner and Bessie Nicolai were over the age of 21 years. Clearly, under the laws of Oregon petitioner was under no legal obligation to support his children after they became of age, absent any evidence that the children were incapable of support. We think it plain that the decree of divorce granted to Bessie Nicolai on January 10, 1927, was not subject to any modification by reason of any obligation of the petitioner to support his adult children.

We conclude that the petitioner was absolutely discharged of all obligations to support his former wife, now Bessie O'Gorman, by the decree of divorce entered January 10, 1927.

We consider the question whether the agreement entered into between the petitioner and his then wife on December 31, 1926, or the indenture of trust to the West Coast National Bank executed January 31, 1927, imposed upon the petitioner a continuing obligation to support his divorced wife during the years 1935 and 1936, who was during those years the wife of J. Sherman O'Gorman. The petitioner fully performed the agreement which he made with his wife. The shares of stock of the Harry T. Nicolai Investment Co. were placed in trust with the West Coast National Bank, as provided in the agreement. The only income the former wife was to receive under the trust agreement was income from the trust fund not to exceed $500 per month after her remarriage. If the income of the trust fund was not sufficient to enable the trustee to pay out of the income, minus the trustee's fee, $500 per month the petitioner was under no obligation to make up the deficit. His only obligation was to "continue ownership of a majority of the stock of the corporation" and to "cause it to declare and pay on or before the first day of each calendar month from its available net earnings dividends sufficient to enable said West Coast National Bank to pay said first party the monthly income provided for her." These were not obligations on the part of the petitioner to contribute to the support of his divorced wife. When the Supreme Court in *Helvering* v. *Fitch*, *supra*, referred to a "continuing obligation however contingent" on the part of a divorced husband, the Court was speaking of an obligation to contribute to the support of the wife. We do not think that the language of the Court had reference to such obligations as the petitioner had in this case.

The Board is of the opinion that the decision of the Supreme Court in *Helvering* v. *Fuller*, *supra*, is controlling in these proceedings, and in accordance therewith we hold that the petitioner is not taxable upon the above stated amounts of trust income which the respondent has added to the petitioner's net income for the years 1934 and 1935.

The second question for consideration is whether the petitioner is entitled to deduct from gross income of 1935 a bad debt charged off in the amount of $13,225. The respondent disallowed the deduction upon the ground stated in his deficiency notice as follows:

It appears from the information at hand that the advances made by the stockholders represented an additional investment by them in connection with their holdings in stock of the Kiddy Kage Company. For this reason the loss, if any, was sustained not later than June 30, 1934, the date on which the corporation was dissolved.

From the above information it appears that the loss, if any, should have been determined and allowed not later than the year 1934 when dissolution was effected and stockholders were entitled to have a valuation of the assets

made. The deduction has, therefore, been eliminated as not sufficiently substantiated as of the year 1935.

Section 23 (k) of the Revenue Act of 1934 provides:

In computing net income there shall be allowed as deductions:

* * * * * * *

(k) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

The $13,225 in question in this issue was claimed in the petitioner's income tax return for 1935 as a bad debt deduction, not as a loss. The respondent disallowed the deduction in the determination of the deficiency and the petition alleges error on the part of the respondent in so doing.

It is the theory of the respondent that the advances made by the petitioner and Woodard to the Kiddy Kage Co. constituted additional investments in the shares of stock of that corporation. The evidence shows, however, that this was not the case. Both the petitioner and Woodard paid to the corporation par value of the shares subscribed for by them. The petitioner was not obligated to pay and did not pay to the corporation any additional amount for the stock subscribed for by him. The question as to whether the petitioner sustained a loss upon his investment in the stock of the corporation is not before us. The only question is whether the petitioner is entitled to deduct as a bad debt $13,225 of his loans to the corporation.

In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, the Supreme Court said:

Petitioner also claims the right of deduction under section 234 (a) (4) of the Revenue Act of 1918 providing for the deduction of "losses sustained during the taxable year and not compensated for by insurance or otherwise." We agree with the decision below that this subdivision and the following subdivision (5) relating to debts are mutually exclusive. We so assumed, without deciding the point, in *Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243, 246, * * *

We think that the respondent erred in treating the claimed bad debt deduction as a loss on an investment in the stock of the corporation.

It is manifestly true that a stockholder of a corporation may also be a creditor of the corporation. In *Daniel Gimbel*, 36 B. T. A. 539, we held that where a stockholder of a corporation, pursuant to prior endorsements and guaranties of the corporation's notes and obligations, pays the corporation's obligations and thus becomes its creditor and the debt is immediately ascertained to be worthless and charged off, the stockholder is entitled to take credit for the bad debt.

We conclude that the petitioner was a creditor of the Kiddy Kage Co. to the extent of his advances on open account to that corporation. As such creditor he was entitled to receive the full amount of his advances before there was any distribution of assets to stockholders.

The dissolution of the corporation did not make his claim to recover on his advances worthless. Under the laws of the State of Oregon a corporation is continued in existence for a period of five years after the date of dissolution for the purpose of winding up its affairs. *G. M. Standifer Construction Corporation* v. *Commissioner*, 78 Fed. (2d) 285; *Nibley-Mimnaugh Lumber Co.*, 37 B. T. A. 617. Manifestly, if the assets of the corporation had been sufficient to return to the petitioner his claim against it for advances, he would not be entitled to deduct from the gross income of any taxable year any portion of the amount of his advances as a bad debt.

The evidence does not show the financial standing of the Kiddy Kage Co. at the beginning of 1935. It had on hand certain assets. During the year 1935 it sold a portion of those assets and there appeared to be a prospect that it could sell its remaining assets for a considerable amount. By the end of 1935 negotiations for the sale of these assets had fallen through. As the result of an appraisal the petitioner and Woodard determined that the fair market value of the remaining assets was not in excess of $6,050 and that $13,225 of the petitioner's claim as a creditor of the corporation was worthless. This amount was charged off the petitioner's books of account in 1935 and claimed as a deduction in his income tax return. The evidence before us does not show that the debt was worthless either in whole or in part prior to 1935. It does show that the debt was worthless to the extent of $13,225 at the end of 1935.

We conclude that the petitioner is entitled to the deduction from the gross income of 1935 of the $13,225 here in question.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

VAN FOSSAN dissents.

---

DISNEY, dissenting: In my opinion, the husband, in entering into the agreement with his wife, placed upon himself a contingent obligation such as to render him taxable upon the income involved, under the thought of *Helvering* v. *Leonard*, 310 U. S. 80. In the *Leonard* case the hussand agreed that "on notice of any fault in the payment of any interest on or principal of them [the bonds placed in trust]", he would substitute cash or securities equal to the principal and cash sufficient to cover interest. Herein he agreed that he would remain the owner of a majority of the stock of the corporation, the

stock of which he placed in trust, and would cause it to declare dividends immediately "out of available net earnings" sufficient to make the payments to the wife. Obviously, he did retain an obligation; equally obviously, it was contingent upon the fact of "available net earnings" determined by the corporation. Yet, if he had received notice, as in the *Leonard* case from the wife, that the corporation, though having available net earnings, had failed to declare and pay dividends sufficient to pay her the amount agreed upon, their agreement would have compelled him, if in fact the necessary dividends had not been declared from available net earnings, to make good to the wife the default, to the extent of such net earnings. It is entirely conceivable that through neglect or intent he might have failed to cause the corporation to pay the necessary dividends. For example, the corporation might have used its "available net earnings" to accumulate funds, or might have paid them out on redeeming preferred stock, when it was not necessary so to do, thus leaving itself unable to pay dividends sufficient to meet the payments to the wife. If this contingency occurred, either through the neglect or intent of the husband, or because he had not, in compliance with his agreement, retained such control over the corporation as to be able to compel it to carry out the terms of his agreement, obviously the wife would have recourse against him to the extent of the "available net earnings", and the amounts payable, for the simple reason that he had violated his agreement. Such liability on his part is, in my opinion, a good example of the continuing obligation mentioned in the *Leonard* case. The petitioner had the burden of showing himself freed therefrom. *Helvering* v. *Fitch*, 309 U. S. 149. I do not think that such showing was made by the petitioner. I, therefore, respectfully dissent.

OPPER agrees with this dissent.