## INGRAHAM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9679.

Circuit Court of Appeals, Ninth Circuit.

April 11, 1941.

Walter Ames and B. Kenneth Goodman, both of San Diego, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Harold Ingraham petitions for a review of a decision of the Board of Tax Appeals holding him liable for a deficiency income tax arising from the inclusion by the Commissioner in his taxable income for the years 1934–1937, inclusive, of the income of a trust created by him in 1924 for the benefit of his then wife and their children, still minors in the tax years in question. In 1926 taxpayer was divorced from his wife by a decree of the Superior Court of Hartford County, State of Connecticut. The

ground of the challenged decision of the Board is that Ingraham owed an obligation in the tax years in question to support his divorced wife and his minor children and that the trust income was income to him because used by him through the medium of the trust he created to discharge this obligation.

The entire income of the trust was payable to the wife during her lifetime, with no requirement to use any of it for the support of the children. The custody of the children was awarded to the mother by the decree of divorce and in the tax years in question she did in fact devote a part of the trust income not determinable on this record to the care and support of the children.

The first question to be determined is whether taxpayer during these years was under any obligation to support his wife. In addition to the trust, taxpayer prior to the divorce had transferred to her the family home, together with its furnishings and furniture and the family automobile. The decree of divorce is silent as to alimony and made no reservation of control over the litigants or their former matrimonium. It was not appealed from and became final long before the tax years in question.

The Board refused to hold that the law of Connecticut imposed no obligation on a husband so divorced for future support of his former wife. The Board sits in Washington with jurisdiction extending over all the states. Section 1111 of the Revenue Code, 26 U.S.C.A. Internal Revenue Code, provides: "The proceedings of the Board and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and *in accordance with the rules of evidence applicable in the courts of the District of Columbia in the type of proceedings which prior to September 16, 1938, were within the jurisdiction of the courts of equity of said District*." (Emphasis supplied.)

■ The supreme court of the District of Columbia applies the rule of judicial notice of the laws of the states of the Union by virtue of the statute which provides that it shall possess the same powers and exercise the same jurisdiction as the circuit and district courts of the United States and shall be deemed a court of the United States. Moore v. Pywell, 29 App. D.C. 312, 9 L.R.A.,N.S., 1078.

■■ We are of the opinion that the Connecticut law is clearly determinable and that after such a decree there is no continuing liability in the husband for the support of the wife. The Commissioner cites no case in the century and a quarter of Connecticut litigation in which a Connecticut lawyer has sought to obtain for a wife, divorced by such a decree, such subsequent support from a husband. In Connecticut divorce, including its incident of alimony, is a creature of statute. German v. German, 1936, 122 Conn. 155, 160, 188 A. 429, 481.

The Commissioner does not contend that there is any Connecticut statute which specifically creates a new jurisdiction over the parties after a divorce decree becomes final. The only statute creating the right of alimony, in force in 1926 at the time of the Ingraham divorce, is: *"Alimony and change of name.* The superior court may assign to any woman divorced by such court a part of the estate of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income, may change her name and may order alimony pendente lite to be paid to the wife in any complaint or cross-bill for divorce pending in said court. In fixing the amount which shall be allowed, the court shall take into consideration the amount of the husband's income, whether the same is derived from property already acquired or from his personal daily exertions or from both and, whenever an order shall be made for the payment, at stated periods, of alimony from the income of the husband, the court may, at the time of issuing such order, fix a definite amount which may, at any time, be paid by the husband in lieu of all periodical payments which would otherwise accrue after the payment of such amount. *Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered by such court.* The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with an order of the court issued under the provisions of this section shall be paid by the state as in criminal cases." (Emphasis supplied.) Section 5182 of Connecticut General Statutes, Revision of 1930.

■ In Connecticut the granting of or failure to grant alimony is discretionary.

The statute is permissible not mandatory. Felton v. Felton, 1938, 123 Conn. 564, 196 A. 791, 793. We do not find in the statute which creates in the court the right to grant alimony any provision that the court retains jurisdiction over the parties to exercise that discretion after the divorce proceeding is terminated by a final decree.

In Felton v. Felton, supra, cited by the Commissioner, the petitioner recognized the absence of the power to grant alimony after final decree. She sought, before it became final, a modification of a decree without an alimony provision to have a nominal alimony award therein and thus preserve the court's jurisdiction for a future enlargement. The court denied the modification of the decree over which it still had control, not on the ground that it had the power at any future time to grant alimony, but because the facts as then existing did not warrant any modification. Had there been such power, in the absence of an alimony award in the decree, all the court's discussion justifying the denial of the nominal award in the decree would have been entirely unwarranted.

The Commissioner cites no case from any American state court in which such jurisdiction is held to be retained by the divorcing court in the absence of a legislative provision making it an incident in the statutory right of divorce. Two cases are relied on by the Commissioner—Smith v. Smith, 88 N.J.Eq. 319, 102 A. 381 and Cross v. Cross, 63 N.H. 444. In each case the state statute gave expressly the court the power after decree to make new orders. See 19 New Jersey Divorce Act, P.L.1902, p. 507; New Hampshire Public Laws, c. 287, § 12.*

On the contrary the state cases cited by Ingraham are unanimous in holding that in the absence of a power reserved by statute a court granting a final divorce decree without an alimony award does not retain jurisdiction over the parties for the ordering of a future alimony. All these states have statutory provisions similar or equivalent to that italicized in Section 5182, of the Connecticut General Statutes, cited above, providing that "Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered by such court."

Under a statute which provided that "the court may from time to time modify its orders in these respects [alimony]," the court in Howell v. Howell, 104 Cal. 45, 37 P. 770, 771, 772, 43 Am.St.Rep. 70, stated that after the divorce, the former husband no longer owed his ex-wife any marital duty and that she could enforce against him no obligation not imposed by the court at the time of the judgment.

In Spain v. Spain, 177 Iowa 249, 158 N. W. 529, L.R.A.1917D, 319, Ann.Cas.1918E, 1225, the court held that under a statute which provided that the court may make such order in relation to maintenance as shall be right, and that subsequent changes may be made in that respect when the circumstances render it expedient, the court could not, subsequently to a decree of divorce making no award of alimony, amend the decree so as to allow alimony. The court stated that the wife relinquished her right to future support when she failed to have it awarded in the original decree.

In Kelley v. Kelley, 317 Ill. 104, 147 N.E. 659, 661, the court held that under a statute authorizing the court to "make such alterations in the allowance of alimony * * * as shall appear reasonable and proper" that before an allowance could be altered there must have been one made at the time when the decree was entered.

A statute which provided that "after a decree for alimony * * * the court may from time to time * * * revise and alter such decree respecting the amount of such alimony * * * and may make any decree respecting any of the said matters which such court might have made in the original suit" was held in Moross v. Moross, 129 Mich. 27, 87 N.W. 1035, 1036, not to authorize the court to modify a decree which made no mention of alimony. The same conclusion was reached under an almost identical statute in Bassett v. Bassett, 99 Wis. 344, 74 N.W. 780, 67 Am.St. Rep. 863. See also McFarlane v. McFarlane, 43 Or. 477, 73 P. 203, 75 P. 139; Saurman v. Saurman, 131 Or. 117, 282 P. 111; Plummer v. Plummer, Me. Aug. 12, 1940, 14 A.2d 705; Cameron v. Cameron, 31 S.D. 335, 140 N.W. 700, Ann.Cas.1915D, 1062; Harner v. Harner, 255 Mich. 515, 238 N.W. 264; Duvall v. Duvall, 215 Iowa 24, 244 N.W. 718, 719, 83 A.L.R. 1242.

---

*But Cf. these decisions with Moross v. Moross and Bassett v. Bassett, infra, holding contra under statutes which endowed the courts with the power to make any decrees which might have been made in the original suit.

The Board holds that because there is no decision of a Connecticut court construing the Connecticut statute creating alimony in a situation like that before the Board, the taxpayer has failed to prove the Connecticut law. We do not agree. A state's statutes are as much the law of the state as its courts' decisions. Here we have a statute which, even assuming it contains all the Connecticut law there is on the statutorily created right to alimony, has had its provisions, or those substantially alike, construed by some nine other states as not creating in the court a right to award alimony after final decree of divorce, where none is awarded in the decree —with no states holding contra. In such a condition of the law there is no such uncertainty as to the rule in Connecticut as will bring the case within Helvering v. Leonard, 310 U.S. 80, 86, 60 S.Ct. 780, 84 L.Ed. 1087.

Since Ingraham owed no obligation to his wife for her maintenance and support, so much of the trust income as contributed to it is not income to Ingraham. Helvering v. Fuller, 310 U.S. 69, 75, 60 S. Ct. 784, 84 L.Ed. 1082. Since it is admitted that part of the trust income to her for the tax years in question was so used by her, the Commissioner erred in holding that the entire income of the trust was income to Ingraham.

Ingraham does not question that he owed a continuing obligation to support his minor children, but contends that during his wife's life the trust instrument gave him no relief from that obligation since the children have no interest in the trust income until after their mother's death. It is true that the paragraphs of the trust making the entire income payable to the wife during her lifetime imposes no legal obligation on her to devote any of it to the care and maintenance of the minor children. However, there are other provisions of the trust instrument which lead us to hold that its income even during the wife's lifetime was intended to aid Ingraham in the discharge of his obligation for the care and maintenance of their children. The trust instrument further recited with respect to the income, even during the period when it was payable to the wife, that: "If at any time during the existence of said trust 1, the said Harold Ingraham, shall be lawfully compelled to pay any sum or sums for the support of the said Olive Judd Ingraham or of our said children, then the said United States Security Trust Company shall repay to me, the said Harold Ingraham, any sum or sums which I may be thus compelled to pay out of the income of said trust estate."

The agreement contained the following additional provision: "Fifth: If, in violation of the agreement hereinafter written, wherein and whereby the said Olive Judd Ingraham agrees to protect her said husband from any and all claims by third persons or by municipal authorities for her support or the support of said children, her said husband shall be lawfully compelled to pay at any time any sum or sums for the support of his wife or children, he shall be entitled to demand and receive from the said trustee full repayment therefor, and the sum or sums so paid to him shall be deducted from the income of said stock."

At the time the trust was created Ingraham and his wife entered into an agreement which recited that the parties thereto had intermarried on the 8th day of December, 1915; that differences had arisen between them and a separation had actually taken place; that the parties had for a long time past and then were living separate and apart from each other; that the issue of such marriage, Harold Ingraham, Jr., aged seven years, and Oliver Judd Ingraham, aged four years, were living with their mother at her special desire, and it was agreed that they should continue to live with her; and that the parties had adjusted their property affairs and made arrangements satisfactory to both for the support of the wife and children. The agreement then recited that in consideration of the covenants thereafter contained on the part of his wife, Harold Ingraham agreed to set up the trust above referred to.

The recited consideration for the creation of the trust is "my affection for the said Olive Judd Ingraham and for our said children." The purpose of the trust is Ingraham's "desire to provide for the future welfare and financial support of my wife, Olive Judd Ingraham, * * * and of our children, Harold Ingraham, Junior, and Oliver Judd Ingraham."

We construe the trust to have been devised for the future care of the wife and minor children of tender years and that this future welfare and financial support were contemplated to commence immediately *for all three* on the creation of the trust. The minor children being with the mother for many years and including the

tax year in question, and Ingraham not having shown he contributed anything to their support, it is a proper inference that he relied upon the affection of the wife for the children to cause her use of part of her income from the trust in their care and maintenance. If she should fail to act in accord with this anticipation of a mother's normal solicitude and he were compelled to contribute to their support, he had protected himself by his right to take an equal amount from her current income from the trust. We hold that to the extent the income to the wife was so expended on the children, it was income to Ingraham.

Since the Commissioner determined a deficiency in the entire amount of the income paid the wife, when it should have been confined.only to the amount paid by her for the support and maintenance of the children, the Board should have held the Commissioner's determination was wrong and permitted evidence to be introduced concerning the exact amount so expended for the children, and upon its production determined the amount and redetermined the deficiency in tax upon that amount. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623.

The decision of the Board is reversed and the cause is remanded for proceedings to redetermine the deficiency pursuant to this opinion.

Reversed and remanded.