**PARKER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11497.

Circuit Court of Appeals, Ninth Circuit.

Feb. 11, 1948.

A. Crawford Greene, Henry D. Costigan, Robert L. Lipman, Stanley Morrison and John Wickson Thomas, all of San Francisco, Cal., for petitioners.

Theron L. Caudle, Asst. Atty. Gen., Sewall Key, Lee A. Jackson, Morton K. Rothschild and Ellis N. Slack, Sp. Assts. to the Atty. Gen., for respondent.

Before STEPHENS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal to review a decision of the Tax Court. Petitioners are executors of the last will and testament of J. M. Mannon, Jr., deceased, hereinafter called decedent. The appeal involves the federal income taxes of decedent for the years 1940 and 1941. (See opinion of Tax Court, Mannon's Estate v. C. I. R., 6 T.C. 1174). The Tax Court found the facts as stipulated by the parties, no testimony being taken.[1]

Decedent and his wife, Frances Berry Mannon, were married in 1927, and were residents of California and domiciled in that state until the death of decedent in March, 1943. They had three children, born in 1928, 1930 and 1932. In 1938 decedent and his wife executed a property settlement agreement and concurrently set up four irrevocable trusts. The corpus of these trusts had previously been the community property of decedent and his wife, and they were created, one primarily for the benefit of Mrs. Mannon and one primarily for the benefit of each of the three children all of whom were minors throughout the tax years here involved. As shown below, the language of the trust instruments imposed no restriction or limitation upon Mrs. Mannon's *use* of the income of the trust created for her benefit; nor was her *use* of the income from the three trusts created for the benefit of the children, restricted or limited during their minority.

Pertinent provisions of these several instruments are here summarized. The property agreement provided that the family residence be conveyed from decedent to his wife, that decedent pay to her so long as they both lived $700 per month, that the property owned by or standing in the name of either (except that transferred to the four trusts) and the earnings of each of them should thereafter constitute their separate property, and that each relinquished all rights in the other's estate. It was provided that the $700 per month was "for her support and maintenance and the support and maintenance of said three minor children during their minority," and that the wife "shall not be called upon to account for said money in any way." It was also provided—and the effect of this statement was considered decisive by the Tax Court— that the conveyance of the real property, payment of the $700 per month, together with establishment of the four trusts "*is hereby accepted by second party [Mrs.*

[1] The statutes upon which appellants' tax liability is predicated are 26 U.S.C.A. Int.Rev.Code, § 22(a) (Sec. 22(a), Internal Revenue Code) which defines gross income, and 26 U.S.C.A. Int.Rev. Code, § 167(a) (2) (Sec. 167(a) (2), Internal Revenue Code) which provides generally as follows: "Where any part of the income of a trust—may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor, then such part of the income of the trust shall be included in computing the net income of the grantor."

A 1944 amendment to this section (26 U.S.C.A. Int.Rev.Code, § 167(c) ) which provides that only such income as has actually been applied in support is taxable to the grantor, is not here applicable because appellants did not file the consents prerequisite to retroactive application of the amendment.

*Mannon*] *as and for satisfactory, reasonable and sufficient provision for her support and maintenance."*

As part of the same transaction the four irrevocable trusts were also created by decedent and his wife out of their community property—one-half of the property going into the trust for the benefit of the wife and one-sixth of the property going into each of the three trusts for the benefit of the children. Two individuals and a trust company were designated, trustees. Income from the trust for the wife was to be paid to her monthly for life, the corpus thereafter to be distributed among the children. Income from the trusts for the children was also to be paid to the wife during their minority, with similar provisions for later distribution of the corpus of the trusts. None of the trust agreements imposed any restriction or obligation as to the wife's use of the income therefrom, and each of the trusts for the children provided that the wife should not be required to account to any one for use of the income. All four of the trust agreements contained a provision that if the trustees should determine that the beneficiary required additional funds for support, maintenance or education, the trustees might pay such funds out of trust principal. (This latter contingency requires no consideration.)

The property and trust agreements were carried into effect and the income from the four trusts was paid to the wife. Whether or to what extent she devoted this income to support and maintenance of herself and of the three children, all of whom survived decedent, does not appear. Very substantial payments were also made by decedent from his separate funds during the taxable years in support and maintenance of his wife and children.

The wife returned the entire trust income during 1940 and 1941 on her separate federal income tax returns and respondent undertook to tax one-half of this income to decedent.[2]

Respondent's theory, sustained by the Tax Court, is that under the terms of the above mentioned property agreement the trust income (the one-half sought to be charged to decedent) might, in decedent's discretion, have been used to discharge his legal obligation to support and maintain his wife and children. If this construction of the agreement is correct there would seem to be little doubt of decedent's tax liability under the principle announced in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391.

■ Both parties to this appeal are in substantial agreement that the decisive issue is whether a proper construction of the terms of the property agreement and trust instruments forces the conclusion that they spell out a *legal obligation* on decedent's wife to use the trust income for support and maintenance, that is to say, whether decedent, by virtue of their terms, could have *required* his wife to apply this income to the discharge of this admitted marital obligation. They further agree that unless there is such an obligation to be found in the terms of these instruments, there is no basis for a holding that the trust income was to be used to discharge a legal obligation of decedent, and that it is only upon the basis that the trust income was *required* to be used to discharge such an obligation, that the income would be taxable to decedent. We therefore concern ourselves with the question of the proper interpretation of the instruments involved, since upon that interpretation must rest a correct disposition of the case.

The Tax Court was of the opinion that the property agreement "surely gave the decedent the legal right to require the wife to first avail herself of the trust income before she could successfully complain that her marital right of support had been vio-

---

[2] Since the trusts were created entirely from what is conceded to have been "community property" under California law, decedent was, of course, grantor as to only one-half of the trust corpora. Respondent undertook to tax him upon only one-half of the trust income, thus giving rise to the issue presented in this case. References herein to trust income sought to be taxed to decedent, apply to the income on that half of the trust property contributed by him.

lated." If this be true petitioners must be denied the relief they seek.

The difficulty presented by this view of the legal effect of these instruments arises from the fact that it suggests, or assumes, as a practical matter, that Mrs. Mannon could not complain of the adequacy of the support furnished her *unless* she could show that she had *used* the trust income for support. We do not agree. On the contrary, we are of the view that if the amounts furnished her were inadequate for her support, she could successfully complain, regardless of how she used the trust income *unless* she was under a *legal obligation* to apply the trust income to her own support.

While the trust agreements are complete in themselves and make no reference to the property settlement agreement, they were contemporaneously executed as part of one complete transaction and must be construed together, an elemental proposition postulated by the Tax Court and conceded by the parties.

We are inclined to agree with the premise of the Tax Court that no distinction is to be drawn between the income from the trust for the wife and the trusts for the children—the income was all paid to the wife. The children, during minority, had no interest of substance therein. The point is somewhat controverted by the parties on appeal, but its resolution is unnecessary in our view of the case.

██ Petitioners contend that there is nothing in the trust instruments themselves which imposes any obligation on the wife to use the trust income for support and maintenance. That there is no such obligation, therein expressly stated, cannot be denied. Respondent points to the provision in each of the trusts empowering the trustees to invade principal if necessary for the beneficiary's support, maintenance or education, and he would imply therefrom an obligation on the wife to use the income for support and maintenance. No authority is cited for making such an implication and that contention has in fact been heretofore expressly rejected. Suhr v. C.I.R., 6 Cir., 126 F.2d 283, 285; see also Gray v. C.I.R.,

38 B.T.A. 584 and Scherer v. C.I.R., 3 T.C. 776.

The three trusts for the children each provided that the wife is not required to account to any one for the income. But respondent emphasizes a provision in the property agreement that decedent should pay Mrs. Mannon $700 per month: "for her support and maintenance and the support and maintenance of said three minor children during their minority and, in addition during the time that said children, or any of them, continue to reside with second party (Mrs. Mannon), and second party shall not be called upon to account for said money in any way."

Petitioners in turn rely on the same provision to indicate that when the parties intended that certain income should be used for support, they so stated specifically.

We agree with petitioners that these several instruments bear every earmark of sound and careful draftsmanship. We cannot read obscurities of meaning into them and we reach the conclusion that rational rules of contract construction disfavor the argument of implied obligations here advanced by respondent. The provisions in the property agreement are in language consumately clear although here it is subjected to conflicting interpretations.

The Tax Court was also influenced by a recitation in the property settlement agreement to the effect that the conveyance of certain real property and the obligation to pay the $700 per month, plus the execution of the trusts, "is hereby accepted by second party (Mrs. Mannon) as and for satisfactory, reasonable and sufficient provision for her support and maintenance." The Tax Court held, and respondent contends, that such a provision gave decedent the discretionary power to *require* the income of the four trusts to be used for support and maintenance. Neither the Tax Court nor respondent fortify this conclusion with precedents which appear to us to compel such a conclusion.

██ The fact that "income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he

sees fit to enjoy it or not", quoted by the Tax Court from several Supreme Court decisions, is now an axiom of tax law but does not assist determination of the issue here. Of the cases cited by respondent concerning the proposition at issue, Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L. Ed. 916, is not helpful, for the settlor of the trust was there held taxable on its income because he reserved the right of modification and revocation; Mather v. C.I.R., 5 T.C. 1001, affirmed per curiam 6 Cir., 157 F.2d 680, concerned income from a trust agreement which expressly gave the settlor the right to require that trust income be used for maintenance; and the decision of this court in Ingraham v. C.I.R., 9 Cir., 119 F.2d 223, wherein we held that trust income paid to the settlor's former wife was taxable to him to the extent it was expended on the children, turned on a trust provision that the settlor should be repaid by the trustee out of trust income any amount the settlor might lawfully be compelled to pay for his children's support.

Petitioners principally rely for authority upon the case of Bok v. Rothensies, D.C., 43 F.Supp. 377, 378, affirmed per curiam 3 Cir., 131 F.2d 222. There, husband and wife, anticipating divorce, entered a separation agreement which provided for support of the children by an irrevocable deed of trust "in lieu of all other claims for support" on behalf of the wife or the children. The court decided that the trust income thereafter paid to the divorced wife with no trust restrictions upon its use by her was taxable to her alone on the sole ground that no *legal obligation* was imposed upon her to apply the trust funds to support of the children and thereby discharge the settlor-father's continuing duty. The court recognized that since the former wife had unrestricted use of the income, whether she actually used it for support of the children, was immaterial. 43 F.Supp. 377 at page 379. In principle, we are unable to distinguish the Bok case and we see no reason why its principles should not be applicable in the case at bar.[3]

■ Respondent urges that decedent could have required the trust income to be used for support and maintenance merely by refraining to pay these expenses out of his separate funds. Another court has previously answered this identical contention. Suhr v. C.I.R., supra. Furthermore, under the California law decedent could not have acquired by virtue of the property agreement the right to refuse to furnish support to his wife so long as they were living together. The parties here recognize and the Tax Court in its opinion stated that husband and wife "cannot while living together validly provide that payment of any certain sum shall discharge the husband's obligation to support and maintain the wife. California Civil Code (Deering) section 159; Brown v. Brown, 83 Cal.App. 74, 80, 81, 256 P. 595; Boland v. Boland, 7 Cal. App.2d 401, 404, 46 P.2d 238."

In its opinion the Tax Court refers to cases in which the court specifically found that the husband did not have the legal right to have the trust income used, if the husband so chose, in partial or complete satisfaction of his legal obligation of support. But it concludes that the language of the property settlement agreement in this case gave decedent that very legal right.

On this pivotal issue we are in disagreement with the Tax Court. We could not achieve any other conclusion without doing violence to the plain and simple provisions of the instrument. They establish, without doubt, the purpose of the parties to give Mrs. Mannon complete dominion over the income of the trusts—a control not circum-

---

[3] The stipulation of the parties states that the decedent and Mrs. Mannon were living together as husband and wife. For each of the years 1940 and 1941 Mrs. Mannon filed federal income tax returns in which she returned as her own income all of the income of each of the four trusts paid to her, and paid all of the income taxes thereon. The stipulation also sets forth that it is not known to what extent or in what manner or for what purpose Mrs. Mannon expended the income from the four trusts which was distributed and paid to her. The contention of petitioners is that the entire trust income, so distributed to Mrs. Mannon, was hers to use and dispose of as she pleased—that she took it outright as her own money, a fact which led her to return it and pay taxes on it, as such.

scribed by the support provisions. The various instruments involved in this controversy constitute convincing proof that decedent did not retain, or attempt to retain, the legal right to *require* his wife to first avail herself of the trust income before she could complain that her marital right of support had been violated. We are unable to follow the Tax Court and read into these instruments a legal obligation on decedent's wife to use the trust income for support and maintenance.

The decision of the Tax Court is reversed.