THE EDWARD KATZINGER COMPANY, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102421.   Promulgated May 21, 1941.

*Harry Thom, Esq.,* and *Benjamin A. Ragir, Esq.,* for the petitioner.
*E. G. Sievers, Esq.,* for the respondent.

MURDOCK: The respondent does not deny that the petitioner actually sustained a loss in the taxable year of $29,950.06. He contends that this entire loss was a loss of the investment of the petitioner in the stock of Bruce-Hunt and was not divisible into an investment of $1,000 in the stock and a bad debt of $28,950.06. He reasons that no part of this loss is deductible because it comes within section 112 (b) (6) of the Revenue Act of 1936, which provides that "No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation." Property distributed "in complete liquidation" means "in complete cancellation or redemption" of the stock. Section 112 (b) (6) (C) and (D). There was a complete liquidation of Bruce-Hunt. But the contention of the respondent fails because the facts show, first, that the advances made by the petitioner to Bruce-Hunt were loans and not contributions of capital increasing the basis of the stock and, second, the petitioner received nothing in the liquidation of Bruce-Hunt in cancellation or redemption of the stock.

The respondent argues that all of the funds advanced by the petitioner must be regarded as additional capital contributions since Bruce-Hunt had to have more than $1,000 with which to conduct its operations. He cites no authority in support of this argument and we know of none. Funds advanced by shareholders to their corporation may or may not be contributions of capital, augmenting the cost of the shares, depending upon the circumstances under which the advancements are made. Advances are an additional contribution of capital if they are intended to enlarge the stock investment, but not if they are intended as a loan. *Daniel Gimbel*, 36 B. T. A. 539; *Bernuth-Lembcke Co.*, 17 B. T. A. 599; *William D. P. Jarvis*, 43 B. T. A. 439. Here the parties intended the advances as loans. This is shown not only by the testimony of the officers, but by the entries on the books of the two companies and the consistent actions of the parties in regard to the advances, including their actions incident to the liquidation. The Commissioner's argument is sound enough in regard to the investment of $1,000 and the petitioner, in its briefs, has made no argument in support of the deduction of $1,000, but the argument falls completely, in so far as it relates to the advances, by reason of the finding that those advances were loans. We hold that the petitioner sustained a loss of $28,950.06 from a debt which it ascertained to be worthless and charged off in 1936.

It does not follow, however, that this loss is deductible in its entirety. Bruce-Hunt joined with the petitioner and other corporations in 1933 in filing a consolidated return, as a result of which a loss of Bruce-Hunt in the amount of $28,429.34 was deducted and actually

offset income of the consolidated group which otherwise would have been subject to tax. The respondent contends that this circumstance prevents the allowance of any greater deduction for loss in 1936 than the excess of the 1936 loss over the deduction thus allowed in 1933, citing Regulations 78, articles 34, 35, 37, and 40 (c) ; *Ilfeld* v. *Hernandez*, 292 U. S. 62; *Commissioner* v. *Emerson Carey Fibre Products Co.*, 70 Fed. (2d) 990; *Greif Cooperage Corporation* v. *Commissioner*, 85 Fed. (2d) 365; and *W. M. Ritter Lumber Co.*, 30 B. T. A. 231, 257, 282.

The parent in the *Ilfeld* case had invested in the stock of and had also made advances to the subsidiaries. Consolidated returns had been filed for the group in which losses of the subsidiaries had been deducted and had offset income in an amount in excess of the total amount which the parent had invested and advanced. The Court said that the affiliated corporations, by filing a consolidated return, had accepted the regulations prescribed by the Commissioner. It said further that the amounts paid for the stock and the advances later made to the subsidiaries stood upon the same footing. It held that the loss was not deductible, saying:

The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of a double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers. [Citation.] There is nothing in the Act that purports to authorize double deduction of losses or in the regulations to suggest that the Commissioner construed any of its provisions to empower him to prescribe a regulation that would permit consolidated returns to be made on the basis now claimed by petitioner.

The *Emerson Carey Fibre Products Co.* case also involved a deduction for a bad debt. The court said in the *Greif* case that losses of affiliates are not allowable to the extent that they result directly or indirectly in a double deduction by the taxpayer of the same losses.

The petitioner seeks to avoid the effect of those cases. It points out that the loss of Bruce-Hunt, which was used as a deduction on the consolidated return, was for the year 1933; the amount advanced in 1933 was fully repaid after 1933; and, it concludes, the losses in question result from advances made after 1933 for which years no consolidated returns were filed. It argues that the first repayments must be considered as repaying the first advances so that the net amount owing at any time represents the most recent advances. The rule contended for by the petitioner may be invoked for certain purposes as, for example, to prevent the defense of the statute of limitations on an open account, and see *Pembroke Realty & Securities Cor-*

*poration*, 42 B. T. A. 341, and cases there cited, but it is of no significance here. Perhaps the petitioner might avoid the effect of the above cited cases if it could effectively separate the 1936 loss from the 1933 loss, as, for example, by showing that the 1933 balance was charged off and a new account started, or by showing that the debtor had completely recovered from the 1933 loss, had paid its debts, and thereafter the account became bad. The principle of applying the first repayments to the earliest advances does not serve this purpose, however, and the loss here comes within the Commissioner's regulations which prevent double deduction of intercompany accounts receivable or other obligations resulting from an intercompany transaction during the consolidated return period. Regulations 78, art. 40 (c).

The loss of Bruce-Hunt for 1933 was deducted on the consolidated return for that year, and any deduction for a bad debt at that time would have been limited, under the cited cases, to the excess over $28,429.34. However, the petitioner did not charge off any of the debt at that time but continued to make advances during the next two years through an open account, the entries on one side showing advances and the entries on the other showing repayments without any allocation of one to the other. The profits of Bruce-Hunt after 1933 just about equaled its losses for the same period. This shows that it never recovered from the 1933 loss and that most of the bad debt loss is traceable directly, through this uninterrupted series of transactions in the open account, to the 1933 operating loss.

The reason for denying a double deduction is the same whether the loss is claimed in 1933 or 1936. The allowance would result directly or indirectly in a double deduction for the taxpayer of the same losses. Where two affiliated corporations have been engaged in a series of continuous transactions resulting in a debtor-creditor relationship, and the debtor has sustained losses which have been deducted from income on a consolidated return, the creditor thereafter may not claim another deduction either by way of worthless stock or bad debt which is traceable directly or indirectly to the losses deducted on the consolidated return, except to the extent that the later losses exceed the earlier. Consequently, the petitioner's loss is limited for the purpose of a deduction to $1,520.72, the amount shown by the Commissioner in his computation in the notice of deficiency.

*Decision will be entered under Rule 50.*