## HULL'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 19.

Circuit Court of Appeals, Second Circuit.

Jan. 7, 1942.

John A. Dutton, of New York City, (Charles J. Eignor, of New York City, of counsel), for petitioners.

J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, and Hubert L. Will, Sp. Assts. to Atty. Gen. for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioners are the surviving executors of the last will of William S. Hull, deceased. They are seeking to have expunged a deficiency in the income taxes of Mr. Hull for 1936 which the Commissioner determined by disallowing a deduction the taxpayer had taken for the cost of stock he held in Primal Realty Corporation and which he claimed became worthless in that year. The Board sustained the Commissioner.

The deduction was claimed under the provisions of Sec. 23(e) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Code, § 23(e) (2). Art. 23(e) (1) of T. R. 94 requires that loss deductions must generally be evidenced by closed and completed transactions fixed by identifiable events. See Larus v. Commissioner, 2 Cir., 123 F.2d 254. In this instance the Board failed to find that the stock became worthless in the year the taxpayer claimed it did and the issue now is whether its decision is sustainable on the evidence.

The Primal Realty Corporation was organized in 1929 to take title to six contiguous parcels of real estate at 2120-2128 Eighth Avenue and 280 West 115th St., in the City of New York. It acquired the

title to this property at a cost of $157,500.-00. Only part of the purchase price was paid and the remainder, to the amount of $102,900, was carried as a debt secured by mortgages. Part of this debt was secured by a second mortgage which was paid in 1932 which happened to be the last profitable year the corporation had. First mortgages on four of the six parcels to secure $64,000 of the debt were held by the taxpayer and a mortgage on each of the other parcels was held by a separate mortgagee. These two mortgages were for $15,000 and $16,000 respectively. They made the total mortgage debt of the corporation $95,-000. The corporation had an authorized capital of $54,600 and issued 182 shares of its stock, having a par value of $100, for cash to each of three stockholders, of which the taxpayer was one. The 182 shares issued to the taxpayer were those claimed to have become worthless in 1936.

There were buildings known as old law tenements on the land of the corporation. They had stores on the ground floor; apartments above; and for a while were well rented. The Dike Corporation was one of the three stockholders and the managing agent during all the period here involved. Until 1935 it put the income from all the parcels into one account and paid out of it for the account of all the parcels. But in that year, the carrying charges being in arrears, one of the mortgagees obtained an assignment of the rents of the property covered by its mortgage and the other mortgagee did likewise either in 1935 or 1936. The taxpayer obtained no written assignment of the rents of the parcels covered by his mortgages but in 1936 made an oral agreement with the mortgagor that he should be treated as an assignee of the rents. Thereafter the managing agent kept separate accounts for each parcel and accounted to the respective mortgagees as assignees of the rents.

The neighborhood was changing during the early part of the period from white to colored tenancy and that, though it hurts the rental value during the transition, is apt to improve it at the end. Another reason why improvement in values could for a time be expected was the opening of the Eighth Avenue subway in 1933. But these reasonable expectations did not bear fruit and from 1933 through 1936 the corporation sustained each year a substantial net loss.

In 1936 the fair market value of the real estate the corporation owned was $90,-000 when appraised as separate parcels but because they did together make up a single corner property the Board found that their fair market value taken as a whole was ten per cent greater. Petitioners argue that this valuation should have been no more than $92,000. We think, however, that the evidence does fairly support the finding of the Board, yet the difference, though a material consideration, is not decisive anyway. No matter which amount is accepted, there were unpaid taxes and interest which in 1936 made the liabilities of the corporation exceed its assets. But even that is of no great significance for it was not shown to have been anything new. Apparently it was a continuation of what had been the fact for two or three years. So if a lack of net liquidating value in 1936 proved the worthlessness of the stock the evidence refuted the claim that it became worthless in that year since the same evidence showed that it became worthless before 1936.

Nor did anything new occur in 1936 which had definite evidential value on the question of when, if at all, the stock became worthless. In that year the corporation was given notices of violations of certain provisions of the New York Multiple Dwelling Law, Consol.Laws, c. 61-A, which called for changes in the buildings which would cost more than the corporation had funds to meet. It was also subject to penalties for non-compliance and the improvements required would not, in all likelihood, increase the rental value sufficiently to be a good investment. Nevertheless, the receipt of notices did not alter the actual condition of the property. There was no intention to abandon it and the corporation was still a going concern in 1936.

█ In view of all these considerations, we cannot say that the Board did not have substantial evidence to support its finding that the stock did not become worthless in 1936. Or to put the same thing into different language, we cannot say that the Board was clearly wrong in failing to find that the proof in behalf of the taxpayer established that the stock did become worthless in 1936. Consequently, the decision under review is based upon findings supported by the record and should be affirmed. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

Affirmed.