**VAN CLIEF et al. v. HELVERING, Commissioner of Internal Revenue.**

No. 8351.

United States Court of Appeals for the District of Columbia.

Decided April 12, 1943.

Mr. Joseph J. Klein, pro hac vice, of New York City, by special leave of Court, with whom Mr. S. Milton Simpson, of Washington, D. C., was on the brief, for Petitioners.

Mr. Arthur Manella, Special Assistant to the Attorney General, pro hac vice, by special leave of Court, with whom Assistant Attorney General, Samuel O. Clark Jr., and Messrs. Sewall Key and Earl C. Crouter, and Miss Helen R. Carloss, Special Assistants to the Attorney General, were on the brief, for Respondents.

Messrs. J. P. Wenchel, Chief Counsel, and Robert L. Williams, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for Respondent.

Before PARKER, Circuit Judge, sitting by designation, and VINSON and EDGERTON, Associate Justices.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, now the Tax Court of the United States. The question involved is the right of petitioners, husband

---

[11] 1941, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329.

and wife who filed a joint income tax return for the year 1937, to deduct as a loss $256,929.03 as representing the cost of stock alleged to have become worthless during that year. The stock was the property of the husband, Ray Alan Van Clief. The Board found that its cost was the above amount, and that the corporation's liabilities were in excess of its assets indicating that the stock was worthless by the end of the year 1937, if advancements made by Van Clief to the corporation between 1930 and 1937 in the amount of $97,496.83 were considered as loans and not as voluntary additions made to capital. The Board held, however, that these advances were not loans giving rise to indebtedness on the part of the corporation, but voluntary additions to capital and that when they were so considered the assets of the corporation exceeded its liabilities and the stock was not worthless at the end of the year in question.

Van Clief was the sole stockholder in the corporation. The sum of $121,725 was admittedly paid by him as purchase price of stock. $135,204.03 was paid by him on indebtedness of the corporation which he assumed at the time of the purchase of a portion of the stock. He contended before the Board that this represented an indebtedness of the corporation to him which became worthless during the taxable year and for which he was entitled to a bad debt deduction. He made the alternative contention that, if it were not treated as an indebtedness of the corporation, it represented an additional cost of the stock, for which he was entitled to a deduction upon a determination that the stock became worthless during the year. The Board found that this amount did not represent an indebtedness of the corporation but additional cost of the stock to Van Clief; and this finding is not now controverted.

The $97,496.83 above referred to was advanced to the corporation between the years 1931 and 1937 by Van Clief, not, as in the case of the other advancements, for payment of debts of the corporation which he had assumed but to provide it with additional funds to keep it going. Proof of these advancements was made, however, along with proofs of the others; and the Board, in finding that the latter did not give rise to indebtedness, made the same finding with respect to the former, saying:

"We have remaining the question as to the character of the advances totaling $97,496.83 made to the corporation by Ray Alan Van Clief from 1930 to 1937. If they were loans and thereby constituted indebtedness of the corporation, the corporate liabilities at December 31, 1937, were in excess of the fair market value of the corporate assets, indicating that the stock was worthless, as the petitioners contend. With respect to the character of the advances here under consideration, the parties have given us very little assistance. Apparently the petitioners feel that they have established the character of the $135,204.03 previously discussed as indebtedness and that a similar conclusion as to the $97,496.83 automatically follows. Such a view is, of course, contrary to the conclusion we have reached with respect to the $135,204.03, and as to the $97,496.83, there is the determination of the respondent as disclosed by his notice of deficiency that the said advances were capital advances and not loans."

We find nothing in the record to support the inference drawn by the Board that these advancements were not intended to create an indebtedness. They were not made, as were the others, in payment of obligations which Van Clief had assumed. They were credited to him, as were the others, on the books of the corporation and appeared there as indebtedness owing to him; and, while the obligations assumed on the purchase of stock would rebut the inference arising from these entries as to the others, there was nothing to rebut it as to the advancements made where no obligation existed. The Board reached its conclusion on the basis of its finding, referred to in the paragraph above quoted, that the items aggregating $135,204.03 were not loans to the corporation, and on the testimony of Van Clief to the effect that the corporation owned various properties and that he preferred to extend it help rather than to liquidate it. With respect to this, the Board said:

"The record indicates that the corporation rather consistently lost money during its entire existence and comparatively did very little business after 1933. In 1937, and undoubtedly, for some time prior thereto, the principal value in the stock of the corporation was bottomed on the real estate owned by it, the said real estate consisting principally of one and two-family homes. For reasons of his own, Van Clief desired to continue the corporation as the owner of the property rather than liquidate it. The lumber business and thereafter such rents as were collected on the homes mentioned failed to produce sufficient reve-

nue to meet the obligations of the corporation or to insure its continued corporate existence. Van Clief accordingly made the advances in question and continued to make similar advances after the taxable year and up to the time of the hearing in this proceeding. His explanation was that he was trying to make the corporation 'good again,' and in response to the question as to why he did not liquidate the corporation in 1937, the answer was, 'because the corporation had various property and I preferred to help the corporation rather than liquidate it.' These responses, in our opinion, reflect the attitude of an owner or proprietor adding to a capital rather than that of a creditor making a loan. The advances were made to insure the continued existence of the corporation and to improve its condition, and to accomplish that purpose the giving of capital assistance rather than the piling up of additional indebtedness is indicated. It is our conclusion therefore that the advances made by Van Clief to the corporation from 1930 up to and including 1937 and totaling $97,496.83 were capital advances and not loans. See American Cigar Co. v. Commissioner [2 Cir.], 66 F.2d 425, certiorari denied, 290 U.S. 699 [54 S.Ct. 209, 78 L.Ed. 601]; and Daniel Gimbel v. Com'r, supra [36 B.T.A. 539].

Motion was made before the Board for a rehearing of its decision with reference to the intention with which the advancements of the $97,486.83 were made to the corporation, and affidavits in support of the motion were offered to the effect that they were made as loans and that Van Clief in making them expected to be repaid by the corporation for the amounts so advanced. This motion was denied.

As stated above, we find nothing in the record to support the inference drawn by the Board that the advancements included in the $97,496.83 were not intended as loans to the corporation and did not give rise to an indebtedness in that amount. The inference that a loan was intended is the natural and logical inference, and the fact that Van Clief was the sole stockholder of the corporation did not tend to rebut it. If the sole stockholder had been a corporation which made advancements to its subsidiary, it would hardly be contended that the advancements did not give rise to an indebtedness as between themselves, although a claim on account thereof would have been postponed in bankruptcy to the claims of other creditors. Sampsell v. Imperial Paper Co., 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293; In re Smith, 2 Cir., 36 F.2d 697. There is no reason to apply a different rule because the sole stockholder is an individual. The fact that Van Clief made the advances to keep the corporation afloat rather than to liquidate it, has no tendency to show that a voluntary addition to capital rather than a loan was intended. See decisions of the Board in Harry T. Nicolai v. Com'r, 42 B.T.A. 899, affirmed 9 Cir., 126 F.2d 927; William D. P. Jarvis v. Com'r, 43 B.T.A. 439, affirmed Helvering v. Jarvis, 4 Cir., 123 F.2d 742; Edward Katzinger Co. v. Com'r, 44 B.T.A. 533, 536. As said by the Board in the case last cited:

"The respondent argues that all of the funds advanced by the petitioner must be regarded as additional capital contributions since Bruce-Hunt had to have more than $1,000 with which to conduct its operations. He cites no authority in support of this argument and we know of none. Funds advanced by shareholders to their corporation may or may not be contributions of capital, augmenting the cost of the shares, depending upon the circumstances under which the advancements are made. Advances are an additional contribution of capital if they are intended to enlarge the stock investment, but not if they are intended as a loan. Daniel Gimbel [v. Com'r], 36 B.T.A. 539; Bernuth-Lembcke Co. [v. Com'r], 17 B.T.A. 599; William D. P. Jarvis [v. Com'r], 43 B.T.A. 439. Here the parties intended the advances as loans. This is shown not only by the testimony of the officers, but by the entries on the books of the two companies and the consistent actions of the parties in regard to the advances, including their actions incident to the liquidation."

There is nothing to the contrary in the cases cited in the Board's opinion. The holding in American Cigar Co. v. Commissioner, 2 Cir., 66 F.2d 425 was that a bad debt deduction was not allowable with respect to advancements made to a corporation, where there was a finding that the obligation thereby created was worthless and uncollectible and the stockholder making them believed at the time that they would never be repaid. If any such finding were made here it would necessarily follow that the stock in the corporation was worthless. The holding in Daniel Gimbel v. Com'r, 36 B.T.A. 539 related to payments made by the stockholder of a corporation on indorsements and guaranties made by him for the corporation. It was held that these payments created the relationship of debtor and creditor between him and the corporation

on account of which the stockholder was entitled to a bad debt deduction, and that no inference was warranted that he intended to make further investment in the corporation's shares or intended a gift to the corporation. In so far as this decision has any application to the instant case, it tends to support the position of taxpayers rather than that of the Commissioner.

It is clear from the record before us that the advancement of the $97,496.83 was considered along with the evidence relating to the $135,204.03 which Van Clief paid on obligations of the corporation which he had assumed in connection with his stock purchase and that little evidence was offered or considered with respect to the nature of the advancements of the sums totaling $97,496.83 or the obligations arising therefrom. In reversing the action of the Board with respect to this matter, therefore, we feel that we should remand the case with direction to grant a rehearing with regard thereto and to receive and consider any evidence bearing thereon which the parties on either side may wish to offer. We think, too, that the Tax Court should determine whether the stock became worthless in the year 1937, if the finding is made that it was worthless at the end of that year. If it became worthless in a year prior to 1937, loss on account thereof could not be taken in the return for 1937. The Board stated that, if the advancements of the $97,486.83 constituted indebtedness of the corporation, the corporate liabilities at the end of the year 1937 were in excess of assets, indicating that the stock was worthless; but there is no finding that it reached this worthless condition in the year 1937,

and the evidence is that the sums constituting the $97,496.83 were advanced over a number of years.

While the Board has stated in its opinion that the excess of liabilities over assets, in the event of a holding that the $97,486.83 is an indebtedness of the corporation, would indicate that the stock was worthless, it is to be remembered that an excess of liabilities over assets does not necessarily determine the worthlessness of stock. Hull's Estate v. Com'r, 2 Cir., 124 F.2d 503; Mahler v. Com'r, 2 Cir., 119 F.2d 869. The Tax Court should make a definite finding upon the remand, therefore, as to whether or not the stock became worthless; and, if so, whether this condition was reached during the tax year in question.

It seems from the record and admissions at the bar of the court that Van Clief has now lost all that he invested in this corporation. There is nothing in the record to justify the inference that the advancements totaling $97,496.83 did not constitute an indebtedness of the corporation. The Board has found that, if this is true, the indications are that the stock of the corporation was worthless at the end of 1937 but has made no finding as to when it became worthless on that hypothesis. The cause will be remanded to the Tax Court, therefore, to hear further proofs and make further findings as to whether an indebtedness of the corporation was created by the advancements in question, and, if so, to determine whether the stock became worthless during the year 1937.

Reversed and remanded.