## O'NEILL v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10, Docket 20915.

United States Court of Appeals
Second Circuit.
Nov. 12, 1948.

Gustave Simons, of New York City (H. William Callmann, of New York City, on the brief), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Ellis N. Slack, and Mary Helen Wigle; Sp. Assts. to the Atty. Gen., and Charles Oliphant, of Washington, D. C., for respondent.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioner, a practicing lawyer residing in New Jersey and having offices in the City of New York, filed his income tax return for the calendar year 1941 with the Collector of Internal Revenue for the Second District of New York. In it he took as deductions for bad debts, relying on § 23(k) of the Internal Revenue Code, 26 U.S.C.A. § 23(k), the full amount of the unpaid remainder of advances he had made over a period of years to two corporations, wholly owned by him, which were dissolved in 1941 and were both insolvent if those advances were debts. The Commissioner disallowed the claimed deductions as bad debts but, treating the advances as capital investments, allowed the deduction of one half of the outstanding remainder of them as capital losses and determined a deficiency of $16,777.05 in the income taxes of the petitioner. The Tax Court found that the "amounts advanced to the corporations by petitioner were not loans" and redetermined the deficiency in the same amount. The sole issue as joined is whether the deductions were lawfully limited in amount to the one half of the unpaid advances which is allowable as a capital loss under § 23(g) of the Internal Revenue Code, 26 U.S.C.A. § 23(g).

The petitioner organized a corporation in 1917 under the laws of New York with an authorized capital of $2000.00, which he paid in; and thereafter until it was dissolved in 1941 he was its sole stockholder, officer and director. This was the 123 Locust Hill Avenue Company, Inc., which will hereinafter be called Locust. In 1936, he organized another corporation under the laws of New York with an authorized capital of $1000.00, which he paid in; and thereafter until that corporation was dissolved in 1941 he was its sole stockholder, officer and director. This was the 123 Hillcrest Avenue Corporation which will hereinafter be called Hillcrest.

No stock certificates were actually issued by either corporation, and neither ever kept any books of account or any records, except that copies of tax returns they filed and computations by accountants in making them up were preserved. Neither ever gave the petitioner any note or other evidence of indebtedness for any of the advances previously alluded to, and but for those advances neither would have had sufficient funds to purchase the real estate to which each held title, as will later be mentioned. Nor did they have any bank accounts of their own. They were both organized primarily to hold the title to real estate and to enable the petitioner to sell it, or otherwise deal with it, without his wife's signature to deeds or other docu-

ments. Locust took title to the petitioner's residence in 1917 and later to some other real estate. Some of the property was subject to mortgage indebtedness. Hillcrest took the title to but one parcel of real estate and that was subject to a mortgage. The corporations owed no debts, except those secured by these mortgages, unless the advances the petitioner made to them were debts. The record does not show that they had any receipts, except some rent the amount of which does not appear, other than the proceeds of whatever sales were made of real estate whose title was held in the name of Locust, it not appearing that the one parcel held in the name of Hillcrest was sold before that corporation was liquidated. In 1938 and thereafter Locust advanced about $6000 to Barclay Holding Corporation, another corporation wholly owned by the petitioner. Why this was done is not made clear in the record and how it was done is shown only by the finding that the checks were drawn on the petitioner's personal bank account.

The petitioner did not keep regular books of account to show his dealings with Locust and Hillcrest. He furnished what money was needed in addition to the $3000 of authorized capital which he had paid in; and the Tax Court found that, "Amounts so paid by petitioner were regarded as advances to the corporations." Part of these advances, for some time at least, went to pay for the maintenance of the house in which he lived, the title to which was held in the name of Locust and for which he paid Locust no rent. The remainder was for the purchase of real estate and the payment of expenses incident to its acquisition and ownership, or to its sale. As the Tax Court found, "Working papers of accountants and financial statements were prepared from lists of receipts and disbursements for the account of the corporations, and check books and bank statements of the petitioner. Balance sheets and other financial statements of the corporations listed the advances made by the petitioner as loans payable. The amounts were referred to as such during conversations between petitioner and accountants employed by him. Checks received by the corporations from the sale of property were endorsed to peti-

tioner and thereafter treated as repayments of loans." The corporations did not, however, pay the petitioner any interest.

It is apparent that the Tax Court did not regard these corporations as non-existent for tax purposes and bypass them entirely in redetermining the petitioner's income taxes for the year here involved. It gave effect to their dissolution in the taxable year as the event which made it possible to determine gain or loss on the theory that the petitioner's advances for their account were contributions by him to their capital. Nevertheless the Tax Court must be assumed, though it did not quite say so in words, to have refused to treat the two corporations as entities so separate and distinct from the petitioner that he could create debts payable by them to him by advancing money for their use with the intent that those advances should be repaid by them. For, ordinarily, this intent to make the advances as loans would fix their status as such. See Edward Katzinger Co. v. Commissioner, 7 Cir., 129 F.2d 74; Van Clief v. Helvering, 77 U.S. App.D.C. 337, 135 F.2d 254; Fairbanks, Morse & Co. v. Harrison, D.C., 63 F. Supp. 495. But that presupposes that the borrower, if a corporation, serves some business purpose substantial enough to make it for tax purposes something more than another name for the lender.

Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and the subsequent cases in which wholly owned and controlled corporations have been disregarded in whole or in part for tax purposes did not require the Commissioner, as a condition of his disregarding such a corporation for one tax purpose, to ignore it for all tax purposes. While, as Commissioner of Internal Revenue v. Smith, 2 Cir., 136 F.2d 556, shows, the treasury may not, in computing the taxable income of the petitioner, switch the basis of computation so as to deny the taxpayer's right to have the amount of his tax determined with the same disregard of corporate entity that has been given effect in establishing his liability for it, it does not follow that the Commissioner may not acquiesce in giving the dissolution of a corporation effect taxwise qua dissolution and at the same time refuse to recog-

nize the corporation as separate and distinct enough from its sole owner for the creation of debts to him.

Whether the Tax Court correctly held that these advances were not loans thus depends not upon the propriety of what it did in allowing a part of the deduction claimed but upon its legal justification for disallowing the part denied. We therefore turn now to a consideration of the effect of the facts proved and found as hereinbefore stated, respecting the creation and existence of these two corporations.

The decisive question is whether the corporations were created to, or did, in fact, serve a recognizable business purpose. If so, the same tax consequences would flow from the petitioner's dealings with them as if they were not owned and controlled by him; if not, the Commissioner was not bound to ignore their economic identity with their owner. Commissioner of Internal Revenue v. National Carbide Corp., 2 Cir., 167 F.2d 304; Brown v. Commissioner, 2 Cir., 115 F.2d 337; United States v. Brager Building & Land Corporation, 4 Cir., 124 F.2d 349; North Jersey Title Ins. Co. v. Commissioner, 3 Cir., 84 F.2d 898. We have been told with reference to the distinction taxwise between a wholly owned corporation and its owner that, "Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499. We do not think these corporations were within the class thus described. The only disclosed reason for their organization and for their being kept in existence until they were dissolved was to make it unnecessary for the petitioner

to procure from time to time his wife's signature to some papers. It was not shown how many such signatures would have been needed or that they could not readily have been obtained for the asking. If the petitioner had any other reason for the creation or the existence of his corporations he failed to state it when given the opportunity at the hearing in the Tax Court, and it is now fair to assume that he had none. That slight approach to a business purpose did not amount to business activity which would make Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399 a pertinent authority here. On the contrary it is but a straw which, being alone, emphasizes the unsubstantial business aspect of the corporate set-up the petitioner relies upon. Granted that no thought of its effect upon taxation prompted his selection of the way he chose to deal in, or invest in, real estate, he was no more entitled to take advantage of such a ready made situation when the corporations were dissolved than he would have been had he created them with possible tax consequences in mind. So this case is not thusly to be distinguished from Higgins v. Smith, supra, and the later decisions in which the rule that "unusual cases may require disregard of corporate form" has been applied. We think it is well within the "unusual" category above mentioned and that the Tax Court did not err when it treated as one for debtor and creditor purposes the man who provided the advances and his corporations which did no recognizable business of their own. Commissioner of Internal Revenue v. National Carbide Corp., supra; Paymer v. Commissioner, 2 Cir., 150 F.2d 334, 336; National Investors Corp. v. Hoey, 2 Cir., 144 F.2d 466, 467; Watson v. Commissioner, 2 Cir., 124 F.2d 437, 439, 440; Brown v. Commissioner, supra; United States v. Brager Building & Land Corp., supra; North Jersey Title Ins. Co. v. Commissioner, supra.

Affirmed.