## MALONEY, Collector of Internal Revenue, et al. v. SPENCER.

### No. 11834.

United States Court of Appeals Ninth Circuit.

Feb. 11, 1949.

See, also, 9 Cir., 170 F.2d 231.

Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key, George A. Stinson, S. Dee Hanson, and Melva M. Graney, Sp. Assts.

to Atty. Gen., Henry L. Hess, U. S. Atty., and Victor E. Harr, Asst. U. S. Atty., both of Portland, Or., and Thomas R. Winter, Sp. Asst. to U. S. Atty., of Seattle, Wash., for appellants.

R. T. Jacob and Randall S. Jones, both of Portland, Or., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

The Collector appeals from a judgment awarding C. B. Spencer, the taxpayer, a recovery of $78,659.03 as a refund of income taxes for his two fiscal years ending February 29, 1944. The taxpayer died pending appeal and his executrix was substituted as appellee.

The district court found that the taxpayer suffered a loss in his fiscal year ending February 28, 1945, in the amount of $95,081.48, and that this loss entitled him to a net operating loss carry-back of this amount to his two last prior fiscal years within § 122 of the Internal Revenue Code, 26 U.S.C.A. § 122. The deduction of the 1945 fiscal year loss from his tax payments in the 1943 and 1944 fiscal years was held to entitle him to the adjudged refund.

The Collector's appeal does not question these figures. His two contentions here are that there is no evidence warranting the district court to draw inferences supporting (a) its finding that the losses of the last fiscal year were incurred in a business conducted by taxpayer rather than the losses of two corporations of which taxpayer was the sole stockholder, and (b) its finding that the claimed losses were not contributions to the capital of the two corporations.

The facts from which the district court drew the inferences supporting the two findings appear in uncontradicted testimony. In 1943 the taxpayer caused to be incorporated three corporations, the Spencer Packing Company of Lebanon, Oregon, hereafter called the Lebanon Packing Co., the Spencer Packing Company of Yakima, Washington, hereafter called the Yakima Co., and the Spencer Dehydrator, Inc. hereafter called the Dehydrator Co. Aside from the directors' qualifying shares, taxpayer owned all the shares of these corporations. They were formed to carry on three fruit, berry, and vegetable packing, canning and dehydrating operations previously conducted by taxpayer as an individual.

One of the results of changing these businesses to the corporate form is obvious. It made the corporations liable for torts such as arise from fruit or vegetable poisoning and injuries to persons employed in or visiting the plants, and liable for contracts other than those arising from an agreement of taxpayer to finance the corporations' operations. The Collector does not claim that because of sole stock ownership the corporations may be disregarded on the theory of alter ego or agency, and his contention of tax liability rests upon the assumption that the corporations were separate entities

The Lebanon Packing plant was acquired by taxpayer in 1935. He added improvements thereon and made it a fully equipped vegetable, fruit and food plant. A part of the Yakima packing plant he leased from a cooperative, the lease continuing throughout the tax years in question. To further equip the Yakima plant, taxpayer bought adjoining land and erected buildings equipped for canning. The dehydrating plant was equipped for drying prunes when taxpayer bought it in the Fall of 1943.

The taxpayer leased these plants one each to the three corporations. In his relation as landlord and a further consideration for his rentals he agreed with each of his tenants that as to their "operations" he would provide adequate financing. This covenant of the three leases reads:

"5. Financing. It is recognized that large sums of money will be required to finance the operations of Lessee, and *Lessors hereby agree that when required they will provide (through personal guarantee and through* the pledge of such of their property covered by this Lease as may be necessary) adequate financing for the needs of Lessee, as a part of the services to be performed in consideration of the rental to be paid hereunder." (Emphasis supplied.)

It also appears that taxpayer's consideration for the issuance of the stock to him by the Dehydrator and Yakima corporations

640

consisted of 600 contracts with him of suppliers of vegetables and fruits for the Lebanon Packing Co. and over 50 such contracts for the Dehydrator Co. Thus these two corporations started with an established business, but without cash for their operating expenditures.

Taxpayer had hoped that these two corporations with going businesses would be able to secure operating funds without his financing. In this he was disappointed. From the beginning these operating funds were procured on joint notes signed by the taxpayer and one or another of the three corporations. Apparently the wartime credit was not easy to obtain and taxpayer financed successively through various banks and finally guaranteed the A.B.C. Financing Company overdrafts to suppliers and banks. It is uncontradicted that taxpayer in over three hundred instances gave his such joint notes for a total of several hundred thousand dollars. Considerable of this credit was obtained by the landlord-taxpayer mortgaging his own properties, including the packing plant properties he had leased to the corporations.

Taxpayer's books of account throughout the taxable years show that he treated the payments of such obligations to be debts to him from the corporations. Similarly they appear as such debts on the corporate books.

In addition, the taxpayer, as landlord, added improvements to his three rented plants, costing him personally over $100,000, for the purpose of making his rented properties pay their rentals. This involved much time and traveling at his own expense before government bureaus, with the usual delays in obtaining war-time certificates of necessity for the required building materials. For this there were several trips to Washington, D. C. and to Seattle.

It is also uncontradicted that taxpayer spent at least a third of his time in performing these activities as landlord in discharging the financing obligations of his leases and in his travels for certificates of necessity and in improving his rented plants. It is also uncontradicted that he had no other source of taxable income in the fiscal years in question.

The Dehydrator Co. was operated for but one season and the Yakima Co. for but two seasons. Both failed and were liquidated. Taxpayer in his third fiscal year paid upon his agreed financing $61,115.48 of his Dehydrator debt and $33,966.02 of his Yakima Co. debt, totaling the $95,081.48.

The evidence also shows that the remaining two-thirds of taxpayer's time was spent in performing corporate functions as president of the three corporations of which he was sole stockholder. There is no evidence that any one of the corporations so was organized that either stockholder or president owed the corporation any duty to give his personal obligation to procure financing of its operating funds or to give his own property as security therefor or expend his own funds for the improvement of the plants leased to the corporations.

■ We think the district court's finding that the taxpayer was engaged "in the business of acquiring, owning, expanding, equipping and leasing food processing plants" is not "clearly erroneous." Federal Rules Civil Procedure, rule 52(a), 28 U.S.C.A.

Here the taxpayer's activities were "extensive, varied, continuous and regular" as in Daily Journal Co. v. Commissioner, 9 Cir., 135 F.2d 687, 688, and Miller v. Commissioner, 9 Cir., 102 F.2d 476. Here is the "frequency and continuity of the transaction" resulting in a business status of Commissioner v. Boeing, 9 Cir., 106 F.2d 305, 319, certiorari denied 308 U.S. 619, 60 S.Ct. 295, 84 L.Ed. 517. Here the taxpayer was engaged in two businesses as in Daily Journal Co. v. Commissioner, supra, 135 F.2d 689, and Harvey v. Commissioner, 9 Cir., 171 F.2d 952. Like the instant case are Fackler v. Commissioner, 6 Cir., 133 F.2d 509; Kales v. Commissioner, 6 Cir., 101 F.2d 35, 122 A.L.R. 211; Foss v. Commissioner, 1 Cir., 75 F.2d 326.

Here is the "regularity" as distinguished from the "isolated or occasional transactions" of Burnet v. Clark, 287 U.S. 410, 424, 425, 53 S.Ct. 207, 77 L.Ed. 397 and Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389. Also is the multiplicity of transactions required by the several leases creating a business obligation to the corporations as distinguished from the "sin-

gle transaction" occurring in the "lifetime" of the taxpayer "but once" of Deputy v. DuPont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416.

We are also of the opinion that there is no clear error in the court's finding that "sums owed to plaintiff by the corporations were unpaid balances on open accounts receivable of plaintiff, * * * and were and are debts which arose in the course of plaintiff's said business and were not contributions to the capital of said corporations or to the capital of either of them."

The sums paid in the last fiscal year by taxpayer on the notes signed and for the corporations' debts secured by him appear as debts due the taxpayer, both on his books of account and those of the corporations. They were paid as a part of the leasehold agreements. The question is what was the taxpayer's intent in agreeing to pay them. Van Clief v. Helvering, 77 U.S.App.D.C. 337, 135 F.2d 254, 256 holds that the inference of indebtedness from a loan to a corporation is not rebutted by the fact that the loan was made by a sole stockholder to his corporation. The Van Clief opinion, 135 F.2d at page 256, states,

" * * * The fact that Van Clief made the advances to keep the corporation afloat rather than to liquidate it, has no tendency to show that a voluntary addition to capital rather than a loan was intended. See decisions of the Board in Harry T. Nicolai v. Com'r, 42 B.T.A. 899, affirmed 9 Cir., 126 F.2d 927; William D. P. Jarvis v. Com'r, 43 B.T.A. 439, affirmed Helvering v. Jarvis, 4 Cir., 123 F.2d 742; Edward Katzinger Co. v. Com'r, 44 B.T.A. 533, 536. As said by the Board in the case last cited:

" ' * * * Advances are an additional contribution of capital if they are intended to enlarge the stock investment, but not if they are intended as a loan. Daniel Gimbel (v. Com'r), 36 B.T.A. 539; Bernuth-Lembcke Co. (v. Com'r), 17 B.T.A. 599; William D. P. Jarvis (v. Com'r), 43

B.T.A. 439. Here the parties intended the advances as loans. This is shown not only by the testimony of the officers, *but by the entries on the books of the two companies and the consistent actions of the parties in regard to the advances, including their actions incident to the liquidation.'* " (Emphasis supplied.)

In the instant case were payments made continuously over a period of three years in the course of appellant's regular business in which it is uncontradicted that he spent a third of his time and his loss was not a capital contribution as one so held which "did not occur in the operation of the trade or business regularly carried on" in Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 206, 77 L.Ed. 389, or one "from isolated or occasional transactions" and "not 'result from the operation of any trade or business regularly carried on,'" held a capital contribution in Burnet v. Clark, 287 U.S. 410, 413, 53 S.Ct. 207, 208, 77 L.Ed. 397.

Here the taxpayer's stock was fully paid for by the transfers of the continuing contracts of suppliers of fruit, vegetables and food to the two corporations. In no sense were the payments of these companies' bad debts a part payment for his stock, as in Janeway v. Commissioner, 2 T.C. 197, affirmed 2 Cir., 147 F.2d 602. Here was the evidence of the corporate and taxpayer's books showing the debtor-creditor relation and the notes given by the taxpayer and the corporations absent in Cohen v. Commissioner, 2 Cir., 148 F.2d 336, 337. Here the liabilities were agreed to be incurred by taxpayer in the expectancy that the corporations would be successful in business and pay off the obligations to him, unlike American Cigar Co. v. Commissioner, 2 Cir., 66 F.2d 425, 427, certiorari denied 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601, where the taxpayer took notes of the corporation of which he was a stockholder for advances to it, fully believing they were worthless and uncollectible.

The judgment is affirmed.