OPINION. Black, Judge: Issue (a). The question involved with regard to the loss on the advances of $15,792.55 to Navigation is whether or not the loss on the debt was incurred in trade or business. The petitioner contends it is a business bad debt deductible under section 23 (k) (1). The respondent contends it is a nonbusiness bad debt deductible under section 23 (k) (4) only. The applicable provisions of the Internal Eevenue Code of 1939 and Treasury Eegulations 111 are printed in the margin.[2] Whether such bad debt loss was incurred in trade or business is essentially a question of fact. The petitioner was a large shareholder and vice president of the debtor corporation. He was engaged in the produce business and had a market for about two carloads of bananas a week, but he could not obtain bananas because of economic conditions. Navigation was formed to bring bananas here from Central America and Cuba. Petitioner invested in Navigation for the purpose of obtaining bananas. The advances were incidental to and proximately related to his produce business. The resulting bad debt loss was incurred in trade or business and is deductible under section 23 (k) (1). See Commissioner v. Stokes Estate, (C. A. 3, 1953) 200 F. 2d 637. Whether or not the petitioner, by his financing activities, was engaged in the money-lending business need not be determined since the bad debt loss was incidental to and proximately related to his produce business. Cf. Robert Cluett, 3d, 8 T. C. 1178 (1947); Stuart Bart, 21 T. C. 880 (1954); and George J. Schaefer, 24 T. C. 638 (1955). Issues (b) and (c). The questions involved regarding the advances to Cash & Carry are: (1) Whether the advances were contributions to capital or loans, (2) did they become worthless in 1947,[3] and (3) if they were loans was their worthlessness incurred in trade or business ? [4] The petitioner contends that the advances were business loans that became worthless in 1947. The respondent contends that they were contributions to capital rather than loans, or nonbusiness loans, and did not become worthless in 1947. Whether the advances were contributions to capital or loans is essentially a question of fact. The petitioner had invested $40,000 in the stock of Cash & Carry. The record does not reveal the existence of any disproportionate debt at the time of incorporation. Cash & Carry was obviously not undercapitalized in its inception. The advances made by petitioner were made subsequent to incorporation and prior to the decision to liquidate. His intent was to create loans. The business was expected to prosper and repayment was contemplated. The shortage of working capital resulted from excessive purchases of hard stock, but the petitioner was apparently unaware of this condition. There are facts tending to support each contention but the substantial amount invested as equity capital and the intention of the parties lead us to conclude that the advances constitute loans rather than contributions to capital. The fact that the petitioner was for all purposes a sole stockholder, see Van Clief v. Helvering, (C. A., D. C., 1943) 135 F. 2d 254, 256, or that the advances were on open account, see Maloney v. Spencer, (C. A. 9, 1949) 172 F. 2d 638, 641, does not require a different conclusion. We do not reach the question of whether the loans to Cash & Carry were business or nonbusiness loans since we find that they did not become worthless in 1947. Just how much petitioner’s debt against Cash & Carry there was at the end of 1947 does not appear from the record. Petitioner on his return for 1947 claimed a bad debt loss of $34,750 against Cash & Carry and, as we have already stated, the Commissioner in his determination of the deficiency disallowed it. On the last day of 1947, it was clear that the debt was not wholly worthless. Cash & Carry was in the process of liquidation. The market was strong and fast selling items were still being purchased in order to reduce the loss. Petitioner had not wholly subordinated his loans to those of other creditors. He recovered a portion of his debt in 1948 while other creditors were not paid in full. These factors tend to show value rather than worthlessness in 1947. See F. Sitter ding, Jr., 20 T. C. 130 (1953). The ultimate loss has been stipulated to be $24,926.08, but that takes into account the 1948 recovery. It constitutes only a portion of the debt due on December 31, 1947. Whether the petitioner would have been entitled to a partial bad debt deduction in 1947 if claimed need not be decided. Petitioner has neither pleaded nor proved compliance with the statutory conditions necessary to the allowance of a deduction for a partially worthless debt.[5] However, we do hold that the petitioner’s capital stock of Cash & Carry in the amount of $39,800 became worthless in 1947. An excess of liabilities over assets does not necessarily render the stock worthless. Van Clief v. Helvering, supra. But at the end of 1947 liquidation was under way and it was clear that all of the creditors, including petitioner, could not be paid in full. It perforce follows that the equity investment in Cash & Carry was worthless. It is, therefore, deductible as a capital loss under section 23 (g) of the 1939 Code. Richard M. Drachman, 23 T. C. 558, 563-564 (1954). The Drachman case seems to be clearly in point and we follow it here. Issue (d). One of petitioner’s assignments of error was that the Commissioner failed to allow as business expenses $1,723.02 interest, $290 rent, and $616.37 taxes. Petitioner alleges that these expenses were incurred and paid in 1947 in his business as a produce dealer. These deductions as well as others claimed, which were clearly not business deductions, were listed in the deductions claimed on page 3 of petitioner’s income tax return for 1947. These deductions were from adjusted gross income, not deductions in arriving at adjusted gross income. Petitioner now claims, as he has a right to do under his pleadings, that these deductions should have been taken in arriving at adjusted gross income. What difference this treatment will make in petitioner’s taxable net income for 1947 we are unable to determine without making a recom-putation under Bule 50. Bespondent in his brief says it will make no difference. It may be this is so. However, it appears that the deductions which we have enumerated are allowable as business deductions from gross income, in computing petitioner’s adjusted gross income, and we hold they should be allowed as business deductions from gross income as petitioner contends. Decision will he entered under Rule 50. Internal Revenue Code of 1939: SEC. 23. DEDUCTIONS PROM GROSS INCOME. (It) Bad Debts.— (1) Gbnbbal Rule. — Debts -which become worthless within the taxable year; or (In the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged oil within the taxable year, as a deduction. * * * [Emphasis supplied.] * ****** (4) Non-Business Debts. — In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term “non-business debt” means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred, in the taxpayer’s trade or business. Regulations 111: Sec. 29.23 (k)-6. Non-Business Bad Dbbts. * * * The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt’s becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business debt for the purposes of this amendment. See I. R. C. 1939, sec. 23 (k)‘ (1), supra, note 2. See I. R. C. 1939, sec. 23 (k) (4), supra, note 2. See I. E. C. 1939, sec. 23 (k) (1), supra, note 2.