**B. A. MAYS and Mildred Aleene Mays, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Harold A. MEARS and Rowena C. Mears, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 13784, 13785.**

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1959.

Clyde W. Key, Knoxville, Tenn., for petitioners.

Morton K. Rothschild, Washington, D. C. (Charles K. Rice, Lee A. Jackson, Robert N. Anderson, S. Dee Hanson, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before McCALLISTER, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

In these cases, which have been heard together, petitioners seek review of the United States Tax Court's decision disallowing deductions claimed by the taxpayers in 1952 for business bad debts under Section 23(k) (1) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 23(k) (1).

Stipulated facts, including exhibits filed, have been adopted by the tax court as its findings of fact. These findings are unchallenged on this review. The sole question presented here is whether the debts which became worthless to the petitioners in 1952 are deductible in full as "business" bad debts under Section 23(k) (1), or whether they are "non-business" bad debts under Section 23(k) (4) and, therefore, deductible only as short-term capital losses.

Section 23(k) (4) defines a "non-business debt" as one "other than a

debt * * * the loss from the worthlessness of which is incurred in the taxpayer's trade or business." If such debt becomes worthless during the taxable year, the resultant loss shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than six months.

The issue of fact in each particular case is whether the loss is incidental to and proximately related to the taxpayer's trade or business. This determination is made difficult, for the reason that the code, the regulations and the decisions fail to define satisfactorily the term "trade or business." Higgins v. Commissioner, 312 U.S. 212, 217, 61 S.Ct. 475, 476, 85 L.Ed. 783.

A brief narrative of the relevant facts should suffice. Petitioner Mears helped organize and obtain financing for four wholesale cigar distributing corporations which were established in the Tennessee cities of Knoxville, Nashville, Bristol and Jackson. He acquired stock in the corporations. For some twenty-four years prior to the organization of these corporations, he had been division sales manager for the Hav-A-Tampa Cigar Company. He had set up the four new wholesale distributors in order to overcome, if possible, a lack of interest in the handling of his company's cigars among the established distributors and retail outlets in these areas.

The wholesale distributor promoted by Mears in Knoxville was the John Housley Cigar Company, which acquired several subsidiary retail outlets. Mears owned 100 shares of Housley's 750 shares of stock; Mays, the other petitioner, owned 60 shares and became its general manager. He was also general supervisor of the Bristol wholesale house. Mears received a salary as sales manager of the Hav-A-Tampa Company; and both he and Mays received bonuses and dividends from Housley and were to have received salaries from the retail outlets. Mears was thus engaged in the business of distributing cigars on three levels, while Mays worked on two. The record fails to show that either was engaged in any other business pursuit.

In 1941, the Housley Company decided to divest itself of its subsidiary retail outlets, inasmuch as retaining them would mean losing the substantial discount on Housley's purchase of Tennessee tobacco tax stamps available only to corporations selling taxable tobacco products at wholesale. These retail outlets were sold to the petitioners and to a third man, Helm, and were incorporated in 1947 as "Knoxville Cigar Stores Company, Inc." Mears acquired and owned seventy percent of the stock of this new corporation; Mays owned twenty percent; and Helm owned ten percent. Mears and Mays loaned, respectively, $16,550.16 and $15,775.08 to the Knoxville Cigar Stores, so that the corporation could expand its business by acquiring new retail outlets and enlarging existing ones. The petitioners received subordinated promissory notes for these loans. The Knoxville Stores met with financial reverses in 1952 and the corporation was liquidated, its obligations to Mears and Mays being then completely worthless.

Mere participation in a corporate venture by owning stock, as an investment, does not place one in the business which the corporation carries on. An individual taxpayer is not allowed to override the corporate entity and take unto himself the tax benefit of section 23(k) (1), unless the debt bears a proximate relationship to the taxpayer's own true business as distinguished from that of the corporation. Commissioner of Internal Revenue v. Stokes' Estate, 3 Cir., 200 F.2d 637. But, where a person invests in a number of entities appertaining to his own business and takes part in their management beyond passively giving financial aid, a bad debt loss to one of the businesses is incident to his regular vocation and is not the result of an isolated investment.

Applying these principles, it would seem that Mears and Mays were far

more than passive investors. Their entire time, their work effort and substantial amounts of their funds were spent in promoting and maintaining their particular occupation of tobaccomen. Their warehouses and retail outlets appertained to their occupation as such.

A similar factual situation was considered by the United States Tax Court in Dorminey v. Commissioner, 26 T.C. 940 (August 1956). There, the petitioner was a wholesale produce dealer in Montgomery, Alabama. He made frequent loans to food brokers and to partnerships and corporations in the food business. One of these loans was made to the United States and Panama Navigation Company, in which Dorminey was an officer and stockholder. The loan was made to insure a steady supply of bananas. Petitioner's economic motive in making the loans was to further his principal business of food distribution. The tax court held that the loans, which later became worthless, were so incidental to and proximately related to his true business that the taxpayer was allowed to deduct the amount of the loans as business bad debts. Nor did it matter whether the taxpayer was actually in the money-lending or corporation-promoting business. The tax court said: "Whether or not the petitioner, by his financing activities, was engaged in the money-lending business need not be determined since the bad debt loss was incidental to and proximately related to his produce business."

In Commissioner of Internal Revenue v. Stokes' Estate, 3 Cir., 200 F.2d 637, the decedent had been engaged in the business of exploiting patents by organizing, financing and actively participating in the management of companies organized to acquire or operate patent rights. This was said to be distinguishable from mere passive individual investment and reinvestment in corporate securities. While it was true that the decedent was engaged in the business of exploiting patents through corporations, his activities in locating, developing and exploiting patents involved much more than the mere investment of funds. Like Mears and Mays, his was a personal activity in which he enlisted a major part of his lifetime, thought and energy. He was engaged in the activity continuously and regularly throughout his business career. Therefore, loans made by the decedent to certain of these corporations were properly deductible as business bad debts.

Maloney v. Spencer, 9 Cir., 172 F.2d 638, involved a net operating loss carry-over, but the factual issue of the taxpayer's "business" was considered critical. Where he organized three corporations to carry on fruit and vegetable packing, canning and dehydrating operations, and his activities in this line were "extensive, varied, continuous and regular" (such as those of Mears and Mays in the cigar distributing business) the taxpayer was properly held to have been in this particular business. See also Campbell v. Commissioner, 11 T.C. 510; Bart v. Commissioner, 21 T.C. 880: both allowing business bad-debt deductions to individuals for loans to corporations in furtherance of their respective businesses.

The petitioners in this case have not taken on the business of their corporations; rather, they made use of the various corporations to further and expedite their own cigar distribution business. The deductions should be allowed.

Accordingly, the decision of the tax court in each case is reversed.