**Otis Newell ELLIOTT and Tacy M. Elliott, husband and wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 66–345.**

United States District Court
D. Oregon.

April 6, 1967.

George W. Mead, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Portland, Or., Stephen Koplan, Tax Atty., Dept. of Justice, Washington, D. C., for defendant.

OPINION AND ORDER

SOLOMON, Judge:

Plaintiffs, Otis and Tacy Elliott, seek to recover $6,274.33 in federal taxes paid in their 1958 through 1960 returns.

In 1954, the Elliotts purchased all the stock in the Elliott Lincoln-Mercury Co.

for $60,000. The Elliotts relied on Leslie Kincaid, an experienced manager for automobile dealers, to manage the business but Mr. Elliott assumed the presidency of the company and he and his wife made the major policy decisions. Kincaid received both a salary and an option to buy stock in the company for his services as manager. The plan was that eventually Kincaid would buy the Elliotts' interest in the corporation.

■ From 1954 to 1960 Elliott made 20 advances totaling $135,379.90. Each advance was recorded in the company's books and Elliott received interest bearing demand notes for the advance. In 1961 the company became bankrupt and at that time it owed Elliott $105,734.48 for these advances.

Plaintiffs in their 1961 return treated this loss as a business bad debt loss and carried the loss back for the preceding three years. Internal Revenue determined that the loss was a capital loss and assessed the plaintiffs with deficiencies for these three years. Plaintiffs paid the deficiencies and then filed a claim for a refund in June, 1965. Internal Revenue rejected the claim in September, 1965.

Plaintiffs contend that the advances to Elliott Lincoln-Mercury Co. were loans and that they are entitled to a business bad debt deduction under § 166(a), Int. Rev.Code, 1954.[1] The government contends that the advances were contributions to capital or, in the alternative, that the loss arose out of a nonbusiness bad debt under § 166(d).[2]

The government asserts that the advances were contributions to capital be-

cause Elliott was the sole stockholder of the company and because he made advances instead of liquidating the company. The same contention was considered and decided adversely to the position asserted by the government in Maloney v. Spencer, 9 Cir. 1949, 172 F.2d 638.

In *Maloney* the Court stated:

"Van Clief v. Helvering, 77 U.S.App. D.C. 337, 135 F.2d 254, 256, holds that the inference of indebtedness from a loan to a corporation is not rebutted by the fact that the loan was made by a sole stockholder to his corporation. The *Van Clief* opinion, 135 F.2d at page 256, states,

'* * * The fact that Van Clief made the advances to keep the corporation afloat rather than to liquidate it, has no tendency to show that a voluntary addition to capital rather than a loan was intended.'" 172 F.2d at 641.

The Ninth Circuit Court of Appeals "holds that the intention of the parties is a major factor in determining whether advances by stockholders to a corporation are loans or capital investments." Los Angles Shipbuilding & Drydock Corp. v. United States, 9 Cir. 1961, 289 F.2d 222, 227.

I find that these advances were loans. Both Elliott and Kincaid testified that the advances were loans, and their testimony is corroborated by the entries on the company's books and the demand notes which were issued. This was not a thin corporation. When the Elliotts took over the business, it had approximately $60,000 in tangible physical as-

---

1. § 166(a) (1) provides:
   "Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year."

2. § 166(d) Nonbusiness debts, provides:
   "(1) (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a

capital asset held for not more than 6 months.
   "(2) Nonbusiness debt defined.—For purposes of paragraph (1), the term 'nonbusiness debt' means a debt other than—
   (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
   (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

sets and no debts. Elliott made the advances because he believed the corporation would be successful and the advances would be repaid with interest.

■ The final issue is whether the Elliotts' loss arose out of a business or a nonbusiness debt. From 1948 to 1960 the Elliotts participated in numerous business ventures.

During this period, the Elliotts made the following loans:

(1) $1,100 to Fred Cheek to buy an interest in an aviation enterprise;

(2) $4,037 to Mr. and Mrs. Ralph McNeil to purchase an auto parts business;

(3) $47,800 to Park Plaza to build apartment houses;

(4) $7,973.23 to Bodine & Clark to purchase cattle; and

(5) $10,000 to Harbor Motor Co. to finance used cars.

During the same period they invested $11,113.75 in a sawmill operation, $11,-750 in a furniture business, $30,000 in a farming and livestock operation, and $20,000 in a grocery market.

They also investigated many other business opportunities. From 1948 to 1960 the Elliotts did not devote their full time to any one business venture and they spent much of their time looking for business ventures to finance or promote. Often the Elliotts would either finance or help finance a business, serve in an advisory capacity and later sell their interest in the business, usually to the persons who were managing it. In some of these ventures the Elliotts made handsome profits. In others they took losses.

The government relies on Whipple v. Commissioner, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), in support of its contention that the Elliotts' loss arose out of a nonbusiness debt. In *Whipple*, the Court rejected the contention that furnishing management and other services to corporations for a reward not different from that flowing to an investor is a trade or business within the meaning of the tax law. But the Court recognized and approved the cases which held that taxpayers who develop corporations as going businesses for sale, or who are engaged in the business of money lending or financing are engaged in a trade or business within the meaning of the tax law. See: Giblin v. Commissioner, 5 Cir. 1955, 227 F.2d 692.

I find that from 1948 to 1960 the Elliotts were in the business of seeking out business opportunities which they could profitably finance or promote and that they lost $105,734.48 in one of these ventures—the Elliott Lincoln-Mercury Co.

Plaintiffs are entitled to a judgment for the amount claimed plus interest and costs.

This opinion will serve as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.